UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CLARENCE BOWEN ALLEN, BRENDA BERMAN,
ANNETTE BIRDSONG, WILLIAM HENRY, JOSE
JACOB, JACQUELINE KING, SUSAN LAMONICA,
JEAN PHIPPS, ROSLYN PRESS, HERBERT
RICHARDSON, VIRGINIA TUFARO, on behalf of
themselves and on behalf of all other similarly situated
individuals,

                       Plaintiffs,              19-CV-3786 (JMF)

      -against-

THE CITY OF NEW YORK and NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION,

                      Defendants.

------------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

THE KURLAND GROUP
*Attorneys for Plaintiffs*
85 Broad Street, 28th Floor
New York, New York 10004
(212) 253-6911

## TABLE OF CONTENTS

Page

TABLES OF AUTHORITIES ......................................................................................................... i

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND............................................................................................................2

ARGUMENT....................................................................................................................................6

    A. Certification of Plaintiffs' Proposed Class Is Warranted and Appropriate ....................6

    B. The Proposed Class Meet The Certification Criteria Pursuant To FRCP 23(a)..............7

        1. The Class is Sufficiently Numerous....................................................................8

        2. There Are Questions of Law and Fact Common to the Class..............................9

        3. The Claims of the Representative Plaintiffs Are Typical of the Claims
           of the Class..........................................................................................................13

        4. The Representative Plaintiffs and Their Counsel Will Fairly and Adequately
           Represent the Class.............................................................................................15

    C. The Class Meet the Certification Criteria Pursuant to 23(b)(3) ....................................17

        1. The Proposed Class Meets The Criteria For Certification Pursuant to FRCP
           23(b)(3) ...............................................................................................................17

           a. *Common Questions Predominate*...........................................................17

           b. *A Class Action is the Superior Method for Resolving This Dispute* ......18

CONCLUSION..............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997)……………………………………………………………...……..6-7, 10

Ansoumana v. Gristede's Operating Corp.,
    201 F.R.D. 81 (S.D.N.Y. 2001)……………………………………………………..…….9, 16

Barone v. Safway Steel Products, Inc.,
    2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)……………………………………….…..16, 18

Bolanos v. Norwegian Cruise Lines Ltd.,
    212 F.R.D. 144 (S.D.N.Y. 2002)…………………………………………………………..17

Caridad v. Metro-N. Commuter R.R. Co.,
    191 F.3d 283 (2d Cir. 1999)…………………………………………...……………7, 10, 11, 13, 14

Consolidated Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir. 1995)………………………………………………………………...……..8

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
    502 F.3d 91 (2d Cir. 2007)………………………………………………………………...15

Damassia v. Duane Reade, Inc.,
    250 F.R.D. 152 (S.D.N.Y. 2008)………………………………………………….…..9, 16

Duling v. Gristede's,
    267 F.R.D. 86 (S.D.N.Y. March 8, 2010)…………………………………………………7, 15

East Texas Motor Freight System, Inc. v. Rodriguez,
    431 U.S. 395 (1977)………………………………………………………………………...6

General Telephone Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)…………………………………………………………………………14

Gortat v. Capala Bros., Inc., (I)
    257 F.R.D. 353, 361-62 (E.D.N.Y. 2009)………………………………………………..6

Gortat v. Capala Bros., Inc., (II)
    2009 WL 3347091 (E.D.N.Y. Oct. 16, 2009)……………………………………………..6, 13

Haddock v. Nationwide Financial Services, Inc.,
    262 F.R.D. 97 (D.Ct. 2009)……………………………………………………………………19

i

Hnot v. Willis Group Holdings Ltd.,
    228 F.R.D. 476 (S.D.N.Y. 2005)…………………………………………………9, 11, 12, 14

Hnot v. Willis Group Holdings Ltd.,
    241 F.R.D. 204 (S.D.N.Y. 2007)…………………………………………………...7, 10, 13

In re Agent Orange Prod. Liab. Litig.,
    818 F.2d 145 (2d Cir. 1987)……………………………………………………………..9

In re Initial Pub. Offerings Secs. Litig. ("IPO"),
    471 F.3d 24 (2d Cir. 2006)……………………………………………………………7, 8

In re Nassau County Strip Search Cases,
    461 F.3d 219 (2d Cir. 2006)…………………………………………………………...18, 19

In re Omnicom Group, Inc. Sec. Litig.,
    2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007)…………………………………………..18

In re Visa Check / MasterMoney Antitrust Litig.,
    280 F.3d 126 (2d Cir. 2001)…………………………………………………………...17, 18

Koss v. Wackenhut Corp.,
    2009 WL 928087 (S.D.N.Y. March 30, 2009)…………………………………………16, 17

Krueger v. New York Telephone Co.,
    163 F.R.D. 433, 439 (S.D.N.Y. 1995)…………………………………………………….10

Latino Officers' Ass'n of N.Y. v. City of New York,
    209 F.R.D. 79 (S.D.N.Y. 2002)……………………………………………………7, 9, 14, 15

Lee v. ABC Carpet & Home,
    236 F.R.D. 193 (S.D.N.Y. 2006)………………………………………………………16

Marisol A. v. Giuliani,
    126 F.3d 372, 377 (2d Cir. 1997)……………………………………………………..6, 13, 16

Mendez v. Radec Corp.,
    232 F.R.D. 78 (W.D.N.Y. 2005)……………………………………………………….……18

Meyer v. Macmillan Pub. Co.,
    95 F.R.D. 411 (S.D.N.Y. 1982)……………………………………………………….14, 15

Noble v. 93 Univ. Place Corp.,
    224 F.R.D. 330 (S.D.N.Y. 2004)……………………………………………………...9

Open Hous. Ctr. Inc. v. Samson Management Corp.,
    152 F.R.D. 472, 276 (S.D.N.Y. 1993)……………………………………………………...9-10

Pesantez v. Boyle Environmental Service, Inc.,
    673 N.Y.S.2d 659 (1st Dep't 1998)……………………………………………………………19

Pichardo v. Carmine's Broadway Feast Inc.,
    2016 WL 4379421 (S.D.N.Y. June 13, 2016)…………………………………………………10

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993)……………………………………………………………………14

Robinson v. Metro-North Commuter Railroad,
    267 F.3d 147 (2d Cir. 2001)…………………………………………………………………7, 13

Rodriguez v. Hayes,
    591 F.3d 1105 (9th Cir. 2010)…………………………………………………………………13

Rossini v. Ogilvy & Mather, Inc.,
    798 F.2d 590 (2d Cir. 1986)…………………………………………………………………..14, 17

Torres v. Gristede's Operating Corp.,
    2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)…………………………………………………..18-19

Trief v. Dun & Bradstreet Corp.,
    144 F.R.D. 193, 198 (S.D.N.Y. 1992)…………………………………………………………….9

Velez v. Novartis Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007)………………………………………………………….7, 10, 11, 13

Wal-Mart v. Dukes,
    564 U.S. 338 (2011)…………………………………………………………………………...9

**Statutes and Rules**                                                                  **Page(s)**

FRCP § 23…………………………………………………………………………………………..6

FRCP § 23(a)…………………………………………………………………………….……7, 13

FRCP § 23(a)(1)……………………………………………………………………………...……8

FRCP § 23(a)(2)…………………………………………………………………………………..9

FRCP § 23(a)(3)…………………………………………………………………………………13

FRCP § 23(a)(4)…………………………………………………………………………..15, 16

FRCP § 23(b)…………………………………………………………………………………...7

FRCP § 23(b)(3)…………………………………………………………………………...8, 17-19

FRCP § 23(g)………………………………………………………………………………15

Title VII of the Civil Rights Act of 1964………………………………………………....6

## INTRODUCTION

Representative Plaintiffs Annette Birdsong and Herbert Richardson ("Representative Plaintiffs") hereby submit this Memorandum of Law in Support of their Motion for Class Certification.  Pursuant to Federal Rules of Civil Procedure ("FRCP") §§ 23(a), 23(b) and 23(g), Representative Plaintiffs respectfully request that the Court issue an Order granting the following relief: 1) certification of the class defined herein pursuant to FRCP 23(b)(3); 2) appointment of Representative Plaintiffs Annette Birdsong and Herbert Richardson as Class Representatives; and 3) appointment of The Kurland Group as Class Counsel.

Plaintiffs filed this action on December 13, 2018 against Defendants City of New York ("City"), and New York City Health and Hospitals Corporation ("H+H," and collectively "Defendants") regarding Defendants' termination of no less than forty-five (45) employees from Jacobi Medical Center ("Jacobi") as part of what Defendants called their Managerial Efficiency Improvement Initiative in 2017 (hereinafter referred to as "2017 MEII").  Plaintiffs allege violations of the Age Discrimination in Employment Act of 1967 ( "ADEA"), 29 U.S.C.A. §623, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000, *et seq.*; the New York State Human Rights Law ("NYS HRL"), New York Executive Law §§290, *et seq.*; the New York City Human Rights Law ("NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.*; 42 U.S.C. §1983; as well as violations of Defendants' employment policies and the Rules and Regulations of the City of New York in the termination of their employment along with the employment of all those in the Proposed Class, described below.

While the merits of Plaintiffs' claims are not before the Court in the instant motion, the evidence establishes Plaintiffs' strong likelihood of success.  In specific, an analysis of the race and age of all Jacobi employees who were terminated by Defendants as part of their 2017 MEII supports the fact that these terminations disparately treated and had a disparate impact on employees based on age and race, as explained in the report of Precision Analytics attached hereto

as **Exhibit A**. In addition, the anecdotal evidence attached, including the Declarations of Annette Birdsong (**Exhibit B**), Herbert Richardson (**Exhibit C**), Brenda Berman (**Exhibit D**), William Henry (**Exhibit E**), Jose Jacob (**Exhibit F**), Jacqueline King (**Exhibit G**), Susan LaMonica (**Exhibit H**), Jean Phipps (**Exhibit I**), Roslyn Press (**Exhibit J**), and Virginia Tufaro (**Exhibit K**), shows that putative class members experienced the same discriminatory impact and treatment as the Representative Plaintiffs.

Certification of the proposed class is the most efficient way to adjudicate these claims, as well as the most equitable, as it ensures all putative class members will have the opportunity to litigate their claims, regardless of their ability to cover the costs associated with litigation. Finally, the issue raised, namely whether Defendants' 2017 MEII adversely impacted and/or treated members of the putative class based on age and/or race, is narrowly construed, pertains to all putative class members and is best suited to be resolved in one action to conserve judicial resources and avoid inconsistency in relief and decisions. As such, Plaintiffs respectfully request that the Court grant the instant relief and certify the proposed class.

## FACTUAL BACKGROUND

H+H hospitals like Jacobi have struggled with challenges in their operations due to chronic internal mismanagement that has allowed for systematic problems including but not limited to failures to properly supervise personnel and maintain necessary personnel policies and procedures. [**Exhibit L**, Deposition of William Foley, pp. 77-79, **Exhibit M,** Birdsong Deposition, pp. 92 – 93; **Exhibit N**, Henry Deposition, pp. 42-43, 76-79; **Exhibit O**, Berman Deposition, pp. 34-37; **Exhibit P**, King Deposition, p. 98; **Exhibit Q**, Richardson Deposition, pp. 40-41, 66-67]. In 2016, New York City Mayor Bill de Blasio, in a purported effort to respond to these problems, announced the "One New York Health + Hospitals Transformation Plan, Bridge to Better Healthcare." [**Exhibit R**, One New York Health + Hospitals Transformation Plan, April 26, 2016]. This

rebranding initiative was alleged to be intended to stabilize H+H hospitals like Jacobi while increasing the quality of services and providing a greater market share of the health care industry for H+H. [**Exhibit R**]. The plan specifically promised to preserve jobs and avoid layoffs. [Id.; **Exhibit S**, Managerial Efficiency Improvement – Message Points; **Exhibit T**, Powerpoint Transformation; *see also* Birdsong Declaration (**Exhibit B**), ¶. 10; Richardson Declaration (**Exhibit C**), ¶. 7; Berman Declaration (**Exhibit D**), ¶. 7; Henry Declaration (**Exhibit E**), ¶. 7; Jacobs Declaration (**Exhibit F**), ¶. 7; King Declaration (**Exhibit G**), ¶. 7; LaMonica Declaration (**Exhibit H**), ¶. 6; Phipps Declaration (**Exhibit I**), ¶. 8; Press Declaration (**Exhibit J**), ¶. 6; Tufaro Declaration (**Exhibit K**), ¶. 7].

Despite these promises, however, Defendants then began claiming that financial and organizational challenges were due to the fact that there was an excess of employees at H+H facilities. [**Exhibit U**, Managerial Efficiency Improvement Initiative (MEII) Frequently Asked Questions]. Thereafter, Defendants began implementing a termination initiative, the 2017 MEII, which disparately affected employees based on age and race in violation of federal, state, and local laws. [**Exhibit A**; *see also* Richardson Declaration (**Exhibit C**), ¶. 9; Berman Declaration (**Exhibit D**), ¶. 10; Henry Declaration (**Exhibit E**), ¶. 10; Jacob Declaration (**Exhibit F**); ¶. 8; Phipps Declaration (**Exhibit I**), ¶. 15; Tufaro Declaration (**Exhibit K**), ¶. 9;]. Defendants' stated reason for Plaintiffs' terminations, and the terminations of members of the Proposed Class, was that there was a redundancy in positions. [**Exhibit U**, Managerial Efficiency Improvement Initiative (MEII) Frequently Asked Questions; **Exhibit V**, Managerial Efficiency Improvement Initiative (MEII), Section I: Overview and Attestation Footnotes; **Exhibit S**, Managerial Efficiency Improvement – Message Points]. Defendants further stated that the positions were being eliminated and would

not be backfilled.  [**Exhibit U**, Managerial Efficiency Improvement Initiative (MEII) Frequently Asked Questions, Section 8].

Despite Defendants' stated position that they would not backfill these positions, Defendants did not seek to eliminate them all and in fact affirmatively worked to re-fill many of them by, among other things, advertising the positions of the members of the class.  [**Exhibit W**, Job Postings].  Furthermore, many of the individuals who filled the positions of employees who were terminated were younger and/or white. [Birdsong Declaration (**Exhibit B**), ¶. 13; Richardson Declaration (**Exhibit C**), ¶. 9; Berman Declaration (**Exhibit D**), ¶. 10; Henry Declaration (**Exhibit E**), ¶. 9; Jacob Declaration (**Exhibit F**), ¶. 9; King Declaration (**Exhibit G**), ¶ ¶. 8, 10; LaMonica Declaration (**Exhibit H**), ¶. 8; Phipps Declaration (**Exhibit I**), ¶. 15; Press Declaration (**Exhibit J**), ¶. 8;].

Upon information and belief, Defendants' 2017 MEII sought to give Jacobi the desired rebranded image— namely a young, white, fresh look to compete in New York City's more upscale emerging private health care facilities, but in doing so Defendants have run afoul of local, state and federal civil rights statutes by terminating non-white employees and employees over 40 years of age. [**Exhibit A**].  Through Defendants' 2017 MEII, there were no less than 45 Jacobi employees terminated, the overwhelming majority of whom were over the age of 40 and/or non-white.  [**Exhibit A**; **Exhibit X**, Jacobi Employees Terminated in the 2017 MEII].  As such, and as Plaintiffs' expert's analysis shows, Defendants engaged in a pattern and practice of age and race discrimination which caused the wrongful termination of older and non-white employees at Jacobi.

The decisions to terminate the proposed class members' employment at Jacobi in 2017 was made in the same manner by the same group of Jacobi leadership and H+H central office in connection with the City of New York.  [**Exhibit Y,** Deposition of Christopher Mastromano, Vol.

4

II, pp. 28-29, 30-33; **Exhibit L**, Deposition of William Foley, pp. 48-50, 70-72]. In making these decisions, Defendants failed to consider whether employees were temporary or permanent, employees' years of experience, whether employees were close to retirement, and whether employees had pending EEO complaints, contrary to local, state, and federal law (**Exhibit Z**, Deposition of Christopher Mastromano, Vol. I, pp. 83, 116, 118; **Exhibit AA**, Deposition of James Matthew Fay, Vol. I, pp. 117-118; **Exhibit BB**, Deposition of Suzanne Pennachio, pp. 46-48). Defendants also made these decisions based on a cost savings target, which led them to target higher-paid employees in order to meet the target, and these higher-paid employees who were terminated are older, on average, than the employees who were not terminated. [**Exhibit AA**, Deposition of James Matthew Fay, Vol. I, pp. 98-103; *see also* **Exhibit A**. Thereafter, Defendants worked together and in concert to finalize and execute the 2017 MEII termination initiative. [**Exhibit Z,** Deposition of Christopher Mastromano, Vol. I, pp. 110-112; **Exhibit L**, Deposition of William Foley, pp. 24-29; **Exhibit CC**, Deposition of James Matthew Fay, Vol. II, p. 65].

While Defendants only terminated employees from Group 11 (those employees who are not represented by a union), Defendants' 30(b)(6) witness, and other witnesses, admitted that it is possible that a Group 11 and Group 12 employee (who is represented by a union) could be doing the same work. (**Exhibit Y**, Deposition of Christopher Mastromano, Vol. II, pp. 83-84; **Exhibit BB**, Deposition of Suzanne Pennachio, pp. 94-95). Furthermore, the title of Coordinating Manager can be held by both Group 11 employees and Group 12, and yet only Group 11 employees were included in the 2017 MEII terminations. (**Exhibit Z**, Deposition of Christopher Mastromano, Vol. I, pp. 122-130).

<u>ARGUMENT</u>

Plaintiffs will establish in the merits phase of this litigation that the 2017 MEII was subjective, allowed for bias, and resulted in disparate treatment and disparate impact of employees at Jacobi based on age and race.  Defendants' witnesses themselves have admitted that the 2017 MEII process was subjective (**Exhibit CC,** Deposition of James Matthew Fay, Vol. II, pp. 47-48, 79-80, 89-90; **Exhibit DD**, Email Exchange between Defendants 4.12.17) and Plaintiff's expert report shows that it had a disparate impact based on age and race (**Exhibit A**).  Furthermore, prior to the 2017 MEII, Defendants affirmatively rescinded Operating Procedure 20-39 (**Exhibit EE**), which had previously provided the only objective review process for managerial decisions affecting Group 11 employees' employment status (**Exhibit FF**).  In the instant motion, Plaintiffs seek only leave to certify the putative class so that all class members have the opportunity to avail themselves of the rulings of this Court with regards to their shared claims.

**A.  Certification of Plaintiffs' Proposed Class Is Warranted And Appropriate**

"[I]t seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." <u>Gortat v. Capala Bros., Inc.</u>, 2009 WL 3347091 (E.D.N.Y. Oct. 16, 2009) ("Gortat II") (*quoting* <u>Gortat v. Capala Bros., Inc.</u>, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009) ("Gortat I")).  Accordingly, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction" <u>Id</u>*.* (*quoting* <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 377 (2d Cir. 1997)).  Furthermore, courts have found that claims under Title VII and its state and local analogues are well-suited for class certification, as these cases are "by their very nature class suits, involving classwide wrongs." <u>East Texas Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 405 (1977).  Indeed, one of the purposes of FRCP 23 is to adjudicate systemic civil rights violations like those Plaintiffs bring here.  "Civil rights cases against parties

charged with unlawful, class-based discrimination are prime examples" of class claims that warrant class certification. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997).

Further, courts in the Second Circuit have held that subjective decision-making processes themselves may constitute a common policy or practice under which employees in protected classes are disadvantaged. *See e.g.,* Robinson v. Metro-North Commuter Railroad, 267 F.3d 147, 156 (2d Cir. 2001) (finding that unchecked delegation of authority itself be a common policy or practice that satisfies commonality); Caridad v. Metro-N. Commuter R.R. Co., 191 F.3d 283 (2d Cir. 1999), *overruled on other grounds by* In re IPO, 471 F.3d 24 (2d Cir. 2006); Duling v. Gristede's, 267 F.R.D. 86 (S.D.N.Y. March 8, 2010) (certifying class; subjectivity of defendants' employment practices supports commonality); Hnot v.. Willis Group Holdings Ltd., 241 F.R.D. 204, 209-11 (S.D.N.Y. 2007) (finding class challenge to subjective employment practices supports commonality); Velez v. Novartis Corp., 244 F.R.D. 243, 258-60 (S.D.N.Y. 2007) (subjectivity of personnel management system "presents a certifiable common question" where statistics and anecdotal evidence offer causal link); Latino Officers' Ass'n of N.Y. v. City of New York ("Latino Officers"), 209 F.R.D. 79 (S.D.N.Y. 2002) (certifying class of employees challenging subjective employment process).

**B.  The Proposed Class Meets The Certification Criteria Pursuant To FRCP 23(a)**

FRCP 23 permits a class to be certified when it satisfies the elements of FRCP 23(a) and one of the subsections of FRCP 23(b). *See* In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 32 (2d Cir. 2006) ("IPO"). The FRCP 23(a) elements are:

> (1) the class is too numerous for joinder to be practicable;
>
> (2) the class shares at least one common question of law or fact;
>
> (3) the named plaintiffs' claims are typical of the class; and

(4) the named plaintiffs will adequately represent the class.

Plaintiffs in the instant matter meet all of the above.  FRCP 23(b)(3), under which Plaintiffs move, allows for certification where there is a "predominance, *i.e.*, law or fact questions common to the class predominate over questions affecting individual members, and superiority, *i.e.*, class action is superior to other methods."  IPO at 471 F.3d at 32. These requirements are satisfied in the instant matter, as explained further herein, and as such certification is warranted and even preferable to resolve the claims brought here.

First, the putative class is estimated at 45.  It would be unnecessarily burdensome to litigate each of these cases seperately, and if even just a small percentage of putative class members proceeded individually, it would unecessarily burden the courts and potentially result in conflicting decisions.  Next, there are common question of law and fact that compel the certification of this action, namely did Defendants' 2017 MEII disparetly treat and/or have a disparate impact on employees at Jacobi based on age and race.  Further, Representative Plaintiffs are similarly situated to, and have claims that are typical of, all other putative class members whose employment was terminated from the same hospital, by the same employer, and the same decisionmakers in Defendants' 2017 MEII.  [*See* **Exhibits B-K, L, Y, Z, CC**].

As such, Plaintiffs seek to certify the following class pursuant to FRCP 23(b)(3):

All people who were 40 years old or older and/or non-white whose employment at Jacobi Medical Center was terminated in 2017 as part of Defendants' policy entitled the Managerial Efficiency Improvement Initiative.

1.  The Class is Sufficiently Numerous

The numerosity requirement is generally satisfied where the proposed class exceeds 40 members.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Here the proposed class is comprised of 45 former Jacobi employees (**Exhibit X**).  As such, the class

meets the requirements set forth in FRCP 23(a)(1) as it is both ascertainable and so numerous that "joinder of all members is impracticable." <u>Hnot v. Willis Group Holdings Ltd.</u>, 228 F.R.D. 476, 481-82 (S.D.N.Y. 2005).

 2.   <u>There Are Questions of Law and Fact Common to the Class</u>

 Commonality requires only one common issue of law or fact. *See* <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 145, 166-67 (2d Cir. 1987).  As such, Plaintiffs need not show that all class members' claims are identical.  <u>Damassia v. Duane Reade, Inc.</u>, 250 F.R.D. 152, 156 (S.D.N.Y. 2008).  In the instant matter, the common issue is whether Defendants' 2017 MEII disparately treated and/or had a disparate impact on employees at Jacobi based on age and/or race.  Further, as explained below, all putative class members in this action "have suffered the same injury" (<u>Wal-Mart v. Dukes</u>, 564 U.S. 338, 349-50 (2011), namely, their employment was terminated.  The question of whether Defendants' 2017 MEII resulted in an adverse impact and/or adverse treatment of class members is not only a common question of law and fact, it is the only question of law and fact, the resolution of which will "generate common answers apt to drive the resolution of the litigation." <u>Id</u>.

 Moreover, Rule 23(a)(2) does not require that each class member experience Defendants' discriminatory conduct in the same way. *See* <u>Latino Officers</u>, 209 F.R.D. at 79, 88 ("the fact that…discriminatory practices manifest in myriad ways cannot save the Defendants from answering to the class of persons injured by those practices"); *see also* <u>Ansoumana v. Gristede's Operating Corp.</u>, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) ("individual questions with respect to damages [*inter alia*] will not defeat class certification"); <u>Noble v. 93 Univ. Place Corp.</u>, 224 F.R.D. 330 (S.D.N.Y. 2004) (granting certification when "[a]ll potential class members are alleged to have been harmed by a common practice..."). In fact, "commonality does not mandate that all class members make identical

claims and arguments," Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992), only that "the gravamen of the Complaint is that defendants discriminated against class members in the same general fashion." Open Hous. Ctr. Inc. v. Samson Management Corp., 152 F.R.D. 472, 276 (S.D.N.Y. 1993). In sum, "the mere presence of some asserted factual differences between class members is not a bar to commonality." Krueger v. New York Telephone Co., 163 F.R.D. 433, 439 (S.D.N.Y. 1995).

Furthermore, "the Court may certify a class based on a theory of common policy of unlawful practice even if there is evidence that some of the putative class members were either not affected or were affected to a lesser degree." Pichardo v. Carmine's Broadway Feast Inc., 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016), *report and recommendation adopted sub nom.* Pichardo v. Carmine's Broadway Feast Inc., 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016). As such, a class should be certified where the claims "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999). "Commonality requires that plaintiffs present common *questions* of fact or law," not necessarily answers, which are more so reserved for the trial on the merits after certification. Hnot II, 241 F.R.D. at 211; *see also,* Velez, 244 F.R.D. at 257-58 (warning against deciding which expert report was more persuasive at the class certification stage). Plaintiffs' allegations of "unlawful, class-based discrimination are prime examples" of common claims that warrant class certification. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997). As the report of Precision Analytics explains "[t]here is strong statistically significant evidence that age was a factor in Defendants' 2017 layoffs" at Jacobi and "it is unlikely that race was not a factor in Defendants' decision regarding who to include in the 2017 layoffs at Jacobi." (**Exhibit A,** pp. 2-3). In addition, the anecdotal evidence attached reflects the fact that putative class members experienced the same or similar disparate treatment and/or impact from Defendants' 2017 MEII (*see*

**Exhibits B-K**).

As such, commonality is satisfied here, in that the class members all claim that Defendants have subjected them to the same unlawful 2017 MEII.   Questions of fact common to the class include:

      a.      Whether Defendants have engaged in unlawful, systemic discrimination on the basis of race and age through its 2017 MEII at Jacobi;

      b.      Whether Defendants intentionally terminated the employment of older and/or non-white employees at disproportionate rates than their younger and/or white counterparts in its 2017 MEII at Jacobi.

      c.      Whether Defendants had knowledge of unlawful disparities in the 2017 MEII at Jacobi which they failed to mitigate or cure.

There are also common legal questions in the proposed class, including:

      a.      Did Defendants' 2017 MEII violate the ADEA Title VII, NYSHRL, and/or NYCHRL by having a disparate impact on employees at Jacobi on the basis of age and/or race?

      b.      Did Defendants' 2017 MEII violate the ADEA Title VII, NYSHRL, and/or NYCHRL by disparately treating employees at Jacobi on the basis of age and/or race?

These common questions of fact and law are sufficient to satisfy Rule 23(a)(2). *See* Hnot I, 228 F.R.D. at 482; Caridad, 191 F.3d at 292.  As in Velez, 244 F.R.D. at 258, each class member's case will revolve around the same evidence, including the statistical and anecdotal evidence, testimony, and documents, some of which are attached hereto.  As the report of Precision Analytics (**Exhibit A**) shows, common class causation is established here because the statistical evidence shows that the 2017 MEII resulted in disparities that commonly impact the class.  Hnot I, 228 F.R.D. at 482.  The anecdotal evidence attached also shows that putative class members have experienced the same discriminatory impact and treatment as the Representative Plaintiffs. As Representative Plaintiff Herbert Richardson explained, "I brought this complaint because I believe the reason for

my termination from Jacobi Medical Center was because of my age and race. Most of the employees who were terminated in 2017 were over the age of 40 and people of color, including myself. Moreover, at the time of the termination, Jacobi had already begun the process by which they started hiring younger individuals and more Caucasian individuals in place of older people and people of color." Richardson Declaration (**Exhibit C**), ¶. 9. Other putative class members experienced the same disparities and felt that their terminations were also motivated by their age and race, especially in light of the fact that they had already witnessed Defendants hiring younger individuals, and more white individuals, to replace the people who were terminated in February 2017. *See, e.g.,* Berman Declaration (**Exhibit D**), ¶. 10; *see also*, Henry Declaration (**Exhibit E**), ¶. 10. Further, many class members "believe [Defendants'] decision to layoff older individuals and individuals of color was because they believed it would help them compete with the private hospitals in bringing in a different clientele, and we did not fit into that vision." Jacob Declaration (**Exhibit F**), ¶. 9.

Plaintiffs' argument for commonality is further bolstered here because "the class is limited in geographic scope" and the challenged policy "has subjected the class . . . to discrimination at the hands of the same…officers." Hnot I*,* 228 F.R.D. at 482*.* The process of deciding who to terminate and the ultimate decisionmaker in the termination of all class members was the same for all class members. [**Exhibit Y,** Deposition of Christopher Mastromano, Vol. II, pp. 28-29, 30-33; **Exhibit L**, Deposition of William Foley, pp. 48-50, 70-72].

Moreover, based on the statistical evidence offered by Plaintiffs (**Exhibit A**), and because the pertinent facts are undisputed and/or clearly established already by Defendants' 30(b)(6) witnesses' testimony, no hearing or additional in-depth analysis of the facts is necessary to determine commonality. Hnot II*,* 241 F.R.D. at 211; Caridad.*,* 191 F.3d at 292 (holding that statistical evidence demonstrates commonality in a challenge to employment practices).

3.   <u>The Claims of the Representative Plaintiffs Are Typical of the Claims of the Class</u>

Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Gortat II</u>, 2009 WL 3347091, at *6 (*quoting* <u>Marisol A.</u>, 126 F.3d at 376). "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably coextensive with those of absent class members; they need not be substantially identical." <u>Rodriguez</u>, 591 F.3d at 1124 (internal quotation omitted) (*citing*, *inter alia*, <u>Marisol A.</u>, 126 F.3d at 326).

Here, typicality is satisfied because each class member's claims arise from the same course of conduct, Defendants' implementation of its 2017 MEII and the subsequent termination of each class member's employment, and each class member relies on the same legal arguments in seeking to prove Defendants' liability.  <u>Robinson v. Metro-North Commuter R.R. Co.</u>, 267 F.3d 147 (2d Cir. 2001). That is, the Representative Plaintiffs' and class members' claims arise from the same core set of facts and Plaintiffs and the class make the same relevant claims.  Plaintiff Birdsong is African-American and was 60 years old in June 2017 when her employment at Jacobi Medical Center was terminated as part of Defendants' MEII.  Similarly, Plaintiff Richardson is African-American and was 61 years old in February 2017 when his employment at Jacobi Medical Center was terminated as part of Defendants' MEII.  For these reasons, typicality is satisfied. *See* <u>Caridad</u>, 191 F.3d at 293.

The "commonality and typicality requirements of Rule 23(a) tend to merge," as both seek to determine whether maintenance of the class is economical and whether the named Plaintiffs' claims and class claims are sufficiently interrelated to protect the interests of the class.  <u>Velez</u>, 244 F.R.D. at 257.  Like the commonality requirement, typicality can be satisfied despite factual differences between class members and named representatives. <u>Caridad</u>, 191 F.3d at 293; <u>Latino Officers</u>, 209 F.R.D. at 89-90.  Where, as here, the Representative Plaintiffs have all been

13

subjected to defendants' discriminatory practices, a finding of typicality is warranted. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 159 n. 15 (1982). Moreover, the pertinent facts regarding the process in question here are undisputed, as explained above.

Furthermore, typicality would not be defeated even if there were some factual variations between class members and Representative Plaintiffs. Meyer v. Macmillan Pub. Co., 95 F.R.D. 411, 414 (S.D.N.Y.1982) ("[T]he fact that the jobs performed by the named plaintiffs are ... unique ... is not a bar to their being class representatives. If it were, no class of professional employees could ever be certified."); Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993); Caridad, 191 F.3d at 293; Latino Officers, 209 F.R.D. at 89-90; Hnot I, 228 F.R.D. at 485 ("Even if one female officer supervised another, it is still possible, as plaintiffs allege, that they all suffered from gender discrimination by the key decisionmakers."). In order to overcome any such differences, the Representative Plaintiffs must merely demonstrate that the issues of fact or law in dispute "occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed. Class." Caridad, 191 F.3d at 293. Plaintiffs can show such centrality because the decision to terminate the employment of all class members was made "in the same general fashion" by the same decisionmakers in the same 2017 MEII process. Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986), *quoting* Falcon, 457 U.S. 147, 159 n. 15 (1982); *see also* **Exhibits L, Y**. The claims of all putative class members therefore all raise the question of whether Defendants' 2017 MEII disparately impacted or disparately treated members of the class. Caridad, 191 F.3d at 293; Hnot I, 228 F.R.D. at 485.

### 4. The Representative Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Class

Adequacy under Rule 23(a)(4) "typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation." Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007) (quotation and citation omitted). *See also* Fed. R. Civ. P. 23(g) (considering class counsel's qualifications). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Duling, 267 F.R.D. 86, 99(S.D.N.Y. March 8, 2010). Here, Plaintiff Birdsong is African-American and was 60 years old in June 2017 when her employment at Jacobi Medical Center was terminated as part of Defendants' MEII. Similarly, Plaintiff Richardson is African-American and was 61 years old in February 2017 when his employment at Jacobi Medical Center was terminated as part of Defendants' MEII. As such, Representative Plaintiffs accurately reflect the proposed class, possess the same interest in recovering their damages resulting from the unlawful termination of their employment and have suffered the same injury as the class members by being terminated pursuant to Defendants' 2017 MEII.

Furthermore, Representative Plaintiffs' interests are not antagonistic to the class and no conflicts of interest exist. Meyer v. MacMillan Publishing Co., 95 F.R.D. 411, 416-417 (S.D.N.Y. 1982) ("only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status"). For example, the fact that a class contains some members with greater or lesser management responsibilities will not defeat certification absent a showing of a "fundamental and actual" conflict of interest. Latino Officers, 209 F.R.D. at 90. To the contrary, here Representative Plaintiffs and the class all allege the same wrongs and seek the same relief by alleging that Defendants' 2017 MEII disparately impacted and disparately treated employees at Jacobi on the basis of age and race. *See* Barone v. Safway Steel Products, Inc, 2005 WL 2009882, at *5 (plaintiffs were adequate where they "seek the same relief as the rest of the class"); *see also* Koss v. Wackenhut Corp., 2009 WL 928087, *8 (S.D.N.Y. March 30, 2009. Further, nothing

suggests any conflicts between Representative Plaintiffs and the class that would interfere with their duties as Representative Plaintiffs, or that Representative Plaintiffs will not adequately and aggressively represent the class in seeking to prove that Defendants' 2017 MEII is discriminatory. Further, the fact that Plaintiffs satisfy both commonality and typicality should favorably impact the Court's consideration of adequacy because when commonality and typicality are both satisfied, adequacy is often satisfied as well. *See* Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("[t]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class"); *see also* Lee v. ABC Carpet & Home, 236 F.R.D. 193, 204 (S.D.N.Y. 2006); Ansoumana, 201 F.R.D. at 87.

Finally, Plaintiffs' counsel are "qualified, experienced, and generally able to conduct this litigation." Marisol A., 126 F.3d at 378. The Kurland Group is experienced in the litigation of employment discrimination claims and class actions and will vigorously prosecute this action on behalf of the class. *See* Declaration of Erica T. Healey-Kagan, attached hereto. Plaintiffs' counsel has sufficient experience and resources to litigate a class action of this size and has represented Plaintiffs and the Class in all related litigation from September 2017 through the present. Id. Further, Plaintiffs' counsel is intimately familiar with the procedural and factual history of the instant matter, the factual and statistical information underlying Plaintiffs' claims, and is best positioned to litigate this class action. The experience, knowledge, and resources of Plaintiffs' counsel, together with the assistance of the Representative Plaintiffs and other class members, satisfies the adequacy requirements of FRCP 23(a)(4).

**C.  The Class Meets the Certification Criteria Pursuant to 23(b)(3)**

The proposed class satisfies FRCP 23(b)(3) because common issues predominate over individual issues, and a class action is the superior mechanism for resolving this dispute. FRCP 23(b)(3).

1.  The Proposed Class Meets The Criteria For Certification Pursuant to FRCP 23(b)(3)

Plaintiffs' claims satisfy FRCP 23(b)(3) because (1) "questions of law or fact common to class members predominate" over questions affecting only individuals and (2) "a class action is superior to other available methods for…adjudicating [this] controversy." FRCP 23(b)(3); *see* Rossini v. Ogilvy & Mather, 798 F.2d 590, 598 (2d Cir. 1986) ("[S]atisfaction of the typicality requirement of 23(a)...goes a long way toward satisfying the Rule 23(b)(3) requirement.").

a.  *Common Questions Predominate*

Predominance is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." In re Visa Check / MasterMoney Antitrust Litig., 280 F.3d 126, 136 (2d Cir. 2001).  "When determining whether common questions predominate courts focus on the liability issue[,] and if the liability issue is common to the class, common questions are held to predominate[.]" Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002).  The common questions identified by Plaintiffs here "predominate" because the "fundamental factual issue...is subject to generalized proof," including the statistical and anecdotal evidence, testimony, and documents attached here.  Koss, 2009 WL 928087, at *11. Because the Representative Plaintiffs' and the class's claims are all based on the same "system," Defendants' 2017 MEII, predominance is satisfied.  Rossini, 798 F.2d at 599.

Further, even if there were individualized defenses, which "may affect different class members differently," this will not defeat predominance. <u>Visa Check</u>, 280 F.3d at 139; <u>In re Omnicom Group, Inc. Sec. Litig.</u>, 2007 WL 1280640, at \*4 (S.D.N.Y. Apr. 30, 2007) (courts "need not deny certification merely because of the presence of a colorable unique defense."). Nor will differences in damages. *See* <u>Barone</u>, 2005 WL 2009882, at \*5; <u>Mendez v. Radec Corp</u>, 232 F.R.D. 78, 93 (W.D.N.Y. 2005) (predominance is satisfied when the challenged policies "have been applied in a more or less uniform fashion to [all] employees"). Here there is one policy, Defendants' 2017 MEII, which was created and implemented by the same decisionmakers and imposed on all class members in the same fashion. [**Exhibits L, Y**]. As such, the common questions here predominate over questions affecting only individual class members, such that FRCP 23(b)(3) is satisfied.

b.  *A Class Action is the Superior Method for Resolving This Dispute*

Since the most important questions of law and fact are common to the class here, FRCP 23(b)(3) is satisfied because a class action is the superior method for resolving the instant claims. Individual class members are relying on membership in the class to vindicate their rights and many, if not most, of the class members would not have the means to initiate individual actions, conduct discovery, and hire experts to analyze data for each individual case. *See* **Exhibits B-K**. Similarly, the disparity in resources between individual putative class members and the Defendants, the City of New York and its agencies, could easily intimidate potential plaintiffs from proceeding individually. Further, "concentrating the litigation in [this] forum simplifies and streamlines the litigation process." *See* <u>In re Nassau County Strip Search Cases</u>, 461 F.3d 219, 230 (2d Cir. 2006); *see also* <u>Barone</u>, 2005 WL 2009882, at \*3 (certifying class to "save [] considerable time and expense"). Deciding all class members' claims in this Court "would eliminate the risk

that [common] questions...will be decided differently." *See* <u>Torres v. Gristede's Operating Corp</u>., 2006 WL 2819730, \*16 (S.D.N.Y. Sept. 26, 2006).

Finally, a class action is superior because it would be manageable. *See* FRCP 23(b)(3)(D). As demonstrated *supra*, the common questions in this case predominate over any individual questions and therefore "any individualized inquiries will be few and far between." <u>In re Nassau County Strip Search Cases</u>, 461 F.3d at 230. To the extent that individual issues exist, "most of [them] can be resolved by [] documentary evidence." *See* <u>Pesantez v. Boyle Environmental Service, Inc</u>, 673 N.Y.2d 659, 661 (1st Dept. 1998); *see also* <u>Haddock v. Nationwide Financial Services, Inc</u>, 262 F.R.D. 97, 128-29 (D.Ct. 2009). Certification avoids these difficulties and affords the victims of Defendants' discrimination a forum in which their claims may be heard. For all of these reasons, a class action is the superior method for adjudicating this case and the classes should be certified.

## CONCLUSION

As such, based on the foregoing Plaintiffs respectfully request that the Court issue an Order granting the following relief: 1) certification of the class defined herein pursuant to FRCP 23(b)(3); 2) appointment of Representative Plaintiffs Annette Birdsong and Herbert Richardson as Class Representatives, and 3) appointment of The Kurland Group as Class Counsel.

Dated: December 30, 2021

                                    //~s~//

                                    Erica T. Healey-Kagan (EK-0425)
                                    THE KURLAND GROUP
                                    *Attorneys for Plaintiffs*
                                    85 Broad Street, 28th Floor
                                    New York, New York 10004