UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
CLARENCE BOWEN ALLEN, BRENDA BERMAN,
ANNETTE BIRDSONG, WILLIAM HENRY, JOSE
JACOB, JACQUELINE KING, SUSAN LAMONICA,
JEAN PHIPPS, ROSLYN PRESS, HERBERT
RICHARDSON, VIRGINIA TUFARO, on behalf of
themselves and on behalf of all other similarly situated
individuals,

                           Plaintiffs,                    19-CV-3786 (JMF)

       -against-


THE CITY OF NEW YORK and NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION,


                           Defendants.
----------------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO
DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION**


THE KURLAND GROUP
*Attorneys for Plaintiffs*
85 Broad Street, 28th Floor
New York, New York 10004
(212) 253-6911

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………………………….ii

PRELIMINARY STATEMENT……………………………………………………………………...1

FACTUAL BACKGROUND………………………………………………………………………1

ARGUMENT……………………………………………………………………………………….2

    I.    PLAINTIFFS' CLAIMS ARE APPROPRIATE FOR CLASS CERTIFICATION……...2

        A.  Plaintiffs' Disparate Impact and Treatment Claims Satisfy Commonality and Typicality……………………………………………………………………...3

        B.  The Class is Sufficiently Numerous…………………………………………..7

        C.  The Claims of the Representative Plaintiffs are Typical of the Claims of the Class….8

    II.    THE CLASS MEETS THE CERTIFICATION CRITERIA PURSUANT TO 23(b)(3)…9

        A.  Common Questions Predominate and A Class Action is the Superior Method for Resolving this Dispute……………………………………………………...9

CONCLUSION……………………………………………………………………………10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Bolanos v. Norwegian Cruise Lines Ltd.,
    212 F.R.D. 144 (S.D.N.Y. 2002)……………………………………………………...….9

Barone v. Safeway Steel Products, Inc.,
    2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)………………………………………….....10

Breyer v. County of Nassau,
    524 F.3d 160 (2d Cir 2008)………………………………………………….………………7-8

Damassia v. Duane Reade, Inc.,
    250 F.R.D. 152 (S.D.N.Y. 2008)……………………………………………………….2-3

Caridad v. Metro-North Commuter R.R.,
    191 F.3d 283 (2d Cir. 1999)……………………………………………………………4, 8-9

Floyd v. City of New York,
    283 F.R.D. 153 (S.D.N.Y. 2012)…………………………………………………….9

Fuller v. Instinet, Inc.,
    120 Fed. Appx. 845 (2d Cir. 2004)……………………………………………………..6

General Telephone Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)………………………………………………………………….5, 8

Gilbreath v. Brookshire Gorcery Co.,
    400 F.Supp. 3d 580, (E.D. Tx. Aug. 21, 2019)……………………………………………5

Hnot v.. Willis Group Holdings Ltd.,
    241 F.R.D. 204 (S.D.N.Y. 2007)……………………………………………………….6

In re Nassau Cty. Strip Search Cases,
    461 F.3d 219 (2d Cir. 2006)……………………………………………………………10

In re Visa Check / MasterMoney Antitrust Litig.,
    280 F.3d 126 (2d Cir. 2001)…………………………………………………………...9, 10

Koss v. Wackenhut Corp,
    2009 WL 928087 (S.D.N.Y. Mar. 30, 2009)………………………………………………...9

Latino Officers' Ass'n of N.Y. v. City of New York,
    209 F.R.D. 79 (S.D.N.Y. 2002) ……………………………………………………….4

Marisol A. v. Giuliani,
 126 F.3d 372 (2d Cir 1997)……………………………………………………………..8

Mendez v. Radec Corp.,
 232 F.R.D. 78 (W.D.N.Y. 2005)……………………………………………………10

Meyer v. Macmillan Pub. Co.,
 95 F.R.D. 411 (S.D.N.Y.1982)………………………………………………………8

Noble v. 93 Univ. Place Corp.,
 224 F.R.D.330 (S.D.N.Y. 2004)……………………………………………………..4

Pichardo v. Carmine's Broadway Feast Inc.,
 2016 WL 4379421 (S.D.N.Y. June 13, 2016)……………………………………….4

Richardson v. City of New York,
 2021 WL 1910689 (S.D.N.Y. 2021)…………………………………………………4

Robidoux v. Celani,
 987 F.2d 931 (2d Cir. 1993)………………………………………………………….8

Robinson v. Metro-North Commuter Railroad,
 267 F.3d 147 (2d Cir. 2001)………………………………………………………….5

Rodriguez v. Hayes,
 591 F.3d 1105 (9th Cir 2010)………………………………………………………..8

Rossini v. Ogilvy & Mather, Inc.,
 798 F.2d 590 (2d Cir. 1986)……………………………………………………4, 5, 9

Selzer v. Board of Educ.,
 112 F.R.D. 176 (S.D.N.Y. 1986)……………………………………………………...6

Sheehan v. Purolator, Inc.,
 839 F.2d 99 (2d Cir. 1988)……………………………………………………………6

Smith v. City of Jackson,
 544 U.S. 228 (2005)…………………………………………………………………..5

Int'l Bhd. of Teamsters v. United States,
 431 U.S. 324 (1977)………………………………………………………………..4, 7

Tennie v. City of N.Y. Dept. of Social Services of N.Y. City Human Resources Admin,
 1987 WL 6156 (S.D.N.Y. Jan. 30, 1987)……………………………………………3

US v. City of N.Y.,
 717 F.3d 72 (2d Cir. 2013)…………………………………………………………..7

Velez v. Novartis Pharms. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007)……………………………………………………..5-6

Wal-Mart v. Dukes,
    564 U.S. 338 (2011)……………………………………………………………………3

Wilder v. Bernstein,
    499 F.Supp 980 (S.D.N.Y. 1980)……………………………………………………3

**Statutes**:

NY Executive law § 296(1)(a)……………………………………………………..….3

New York City Code § 8-107(1)(a)(2)……………………………………………….3

Age Discrimination in Employment Act of 1967……………………………………..3

Title VII of the Civil Rights Act of 1964…………………………………………....3

**Rules**:

FRCP 23(a)………………………………………………………………………1, 2

FRCP 23(b)………………………………………………………………………….1

FRCP 23(b)(3)……………………………………………………………………...1

FRCP 23(g)…………………………………………………………………………1

**PRELIMINARY STATEMENT**

Representative Plaintiffs Annette Birdsong and Herbert Richardson ("Representative Plaintiffs"), on behalf of the proposed class of former employees of Defendants City of New York ("City") and New York City Health and Hospitals Corporation ("H+H," and collectively "Defendants") submit this Memorandum of Law in Reply to Defendants' Opposition to Plaintiffs' Motion for Class Certification. Pursuant to FRCP 23(a), 23(b) and 23(g), Representative Plaintiffs respectfully request that the Court issue an Order granting: 1) certification of the class defined herein pursuant to FRCP 23(b)(3); 2) appointment of Representative Plaintiffs Annette Birdsong and Herbert Richardson as Class Representatives; and 3) appointment of The Kurland Group as Class Counsel.

As explained herein, Plaintiffs have met their burden to establish that class certification is necessary and appropriate, and that Representative Plaintiffs and Class Counsel will adequately represent the class. Defendants fail to raise any persuasive argument to deny such relief. Defendants instead argue that the Court should deny certification because 1) there was no singular Managerial Efficiency Improvement Initiative in 2017 ("2017 MEII"), 2) H+H only provided general guidance to the individuals implementing the lay-offs, and 3) Plaintiffs' statistical analysis was based on flawed data. (*See*, Defendants' Memorandum of Law in Opposition to Class Certification ("Def. Memo in Opp."), ECF. No. 75, pp. 1-2). None of this is accurate. In fact, the evidence shows that the same group of Defendants' decisionmakers implemented one 2017 MEII, which targeted older employees and employees of color, as evidenced by statistical analysis of data produced by Defendants, as well as anecdotal evidence regarding how the 2017 MEII caused the same injury to all class members—termination of their employment.

**FACTUAL BACKGROUND**

Plaintiffs rely on the factual background included in the instant motion [ECF No. 70] but will briefly address the factual inaccuracies asserted by Defendants in their opposition. First, Defendants claim "H+H committed to not laying off any Group 12 employees." (Def. Memo in Opp. p. 3-4).

1

However, Defendants in fact promised to preserve jobs and avoid any layoffs. [**Exhibit S[1]**; **Exhibit T**; *see also* **Exhibits B**-**K**]. Defendants also try to recast the 2017 MEII as two separate employment decisions involving distinct considerations and decisionmakers. (Def. Memo in Opp. p. 6). However, Plaintiffs' claims relate to employment decisions structured to meet one target at one hospital, Jacobi, and involved the same decisionmakers and guidance. [**Exhibit Y**, pp. 28-29, 30-33; **Exhibit L**, pp. 48-50, 70-72]. Thus, it is clear that Defendants worked together to finalize and execute the 2017 MEII termination initiative. [**Exhibit Z**, pp. 110-112; **Exhibit L**, pp. 24-29; **Exhibit CC**, p. 65].

Finally, Defendants spend a substantial portion of their opposition attempting to undermine Plaintiffs' statistical expert, arguing his report "is based on flawed data and, thus, no conclusions can be drawn from it." (Def. Memo in Opp. p. 17). However, though Defendants' expert, Dr. Erath, "had the opportunity to conduct the tests on his own terms," he "chose not to," and Plaintiffs' expert, Dr. Thompson, completed "new statistical tests, conforming as close as possible to the critiques of the Erath Report." (**Exhibit 1[2]**, Supplemental Report, ¶ 3). Plaintiffs' expert specifically addressed the concerns posed by Defendants' expert and found "the Erath Report change[d] none of [the] opinions in the Original Thompson Report." (**Exhibit 1**, ¶ 2). Thus, the Supplemental Report confirmed the original report's conclusions even after addressing Defendants' expert's concern. (**Exhibit 1**, ¶ 6).

## ARGUMENT

## PLAINTIFFS' CLAIMS ARE APPROPRIATE FOR CLASS CERTIFICATION

Plaintiffs have met their burden to certify the proposed class under Rule 23(a). As Plaintiffs explained in the instant motion, Plaintiffs need not show that all class members' claims are identical and here the common issue is whether Defendants' 2017 MEII disparately treated and/or had a disparate impact on older employees and/or employees of color at Jacobi. Damassia v. Duane Reade, Inc., 250

---

[1] Lettered Exhibits referenced herein are references to the exhibits attached to the Declaration of Erica T. Healey Kagan, dated Dec. 30, 2021 [ECF No. 72], accompanying Plaintiff's Motion to Certify [ECF No. 70].
[2] Numbered Exhibits referenced herein are references to the exhibits cited in support of Plaintiffs' reply, attached to the Declaration of Erica T. Healey Kagan, dated April 18, 2022.

F.R.D. 152, 156 (S.D.N.Y. 2008). The relevant question for certification is whether all class members "have suffered the same injury." Wal-Mart v. Dukes, 564 U.S. 338, 349-50 (2011). Here, Defendants do not dispute that all class members were either terminated or identified for termination, after which they were either demoted to a lower title or forced to retire, both of which are also adverse employment actions. But ultimately the question of whether Defendants' 2017 MEII resulted in an adverse impact and/or adverse treatment of class members is the only question of law and fact, the resolution of which will "generate common answers apt to drive the resolution of the litigation." Id.

Contrary to Defendants argument, without citing a single case in support, that "it is plainly inappropriate for a class to include individuals with age and race discrimination claims in one class" (See, Def. Memo in Opp. p. 13), Plaintiffs have shown that this is simply not true. While Defendants raise procedural objections to certification of Plaintiffs' ADEA claims, this ignores the fact that NYS and NYC Human Rights Laws protect both age and race. *See*, NY Exec. § 296(1)(a); New York City, N.Y., Code § 8-107(1)(a)(2). Moreover, courts regularly certify classes alleging discriminatory conduct on the basis of more than one protected class. *See*, Wilder v. Bernstein, 499 F.Supp 980, 992 (S.D.N.Y. 1980) (certifying a class based on racial and religious discrimination); Tennie v. City of N.Y. Dept. of Social Services of N.Y. City Human Resources Admin, 1987 WL 6156, at *1 (S.D.N.Y. Jan. 30, 1987) (certifying a class based on racial and sexual discrimination). As such, certification of Plaintiffs' proposed class consisting of age and race claims is appropriate.

### A. **Plaintiffs' Disparate Impact and Treatment Claims Satisfy Commonality and Typicality[3]**

While Defendants argue that Plaintiffs failed to identify a specific facially neutral policy underlying their disparate impact claims (See, Def. Memo in Opp. p. 13), Defendants only do so by attempting to redefine the 2017 MEII as two entirely separate decisions. However, the evidence in the record proves this distinction is misleading. As discussed *supra*, it is clear that Defendants worked

---

[3] Defendants argue that certification of Plaintiffs' §1983 claims should be denied for the same reasons as Title VII. (Def. Memo in Opp. p. 19).

3

together and in concert to finalize and execute the 2017 MEII termination initiative. [**Exhibit Z**, pp. 110-112; **Exhibit**, pp. 24-29; **Exhibit CC**, p. 65]. Thus, the 2017 MEII is precisely the type of specific, facially neutral policy required to show disparate impact. *See*, Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, n. 15 (1977).

Further, while Defendants attempt to identify differences in the ways in which Plaintiffs were terminated, these differences do not mitigate the underlying discriminatory impact. (Def. Memo in Opp. p. 13). Rule 23 does not require that each class member experience Defendants' discriminatory conduct in the exact same way. *See* Latino Officers' Ass'n of N.Y. v. City of New York*,* 209 F.R.D. 79, 88 (S.D.N.Y. 2002) ("the fact that…discriminatory practices manifest in myriad ways cannot save the Defendants from answering to the class of persons injured by those practices"); *see also* Noble v. 93 Univ. Place Corp., 224 F.R.D. 330 (S.D.N.Y. 2004) (granting certification when "[a]ll potential class members are alleged to have been harmed by a common practice..."). It is further irrelevant whether each class member was terminated in precisely the same manner. Pichardo v. Carmine's Broadway Feast Inc., 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016); Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999); Hnot, 241 F.R.D. at 211.

Moreover, while Defendants rely on Richardson v. City of New York, 2021 WL 1910689 (S.D.N.Y. 2021) to argue that "plaintiffs have not shown that H+H constrained Jacobi's leadership in any way from selecting the positions they thought should be eliminated," (Def. Memo in Opp. pp. 14-15), this argument is unavailing because, as discussed *supra*, the same group of individuals made the decision to terminate the proposed class members, which supports Plaintiffs' claims that H+H discriminated against Plaintiffs "in the same general fashion." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986) (since "many of the decisions affecting employees' opportunities… were made by the same group of people within" defendants' organization, they "discriminated in the same general fashion"). [**Exhibit Y**, pp. 28-29, 30-33; **Exhibit L**, pp. 48-50, 70-72]. Moreover, courts in the Second Circuit have held that subjective decision-making processes themselves may constitute a

4

common policy or practice under which employees in protected classes are disadvantaged. *See e.g.,* Robinson v. Metro-North Commuter Railroad, 267 F.3d 147, 156 (2d Cir. 2001) (unchecked delegation of authority can itself be a common policy or practice that satisfies commonality).

Defendants next attempt to recast Plaintiffs' allegations as identifying only the 2017 MEII itself without also identifying facts to establish causation. Defendants cite Gilbreath to argue that "plaintiffs terminated in a layoff cannot point to the layoff itself as the practice that disparately impacted older workers." (Def. Memo in Opp. p. 15); Gilbreath v. Brookshire Gorcery Co., 400 F.Supp. 3d 580, 590 (E.D. Tx. Aug. 21, 2019). While the court in Gilbreath required plaintiffs "do more than 'simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact,'" Id. at 590 (*quoting*, Smith v. City of Jackson, 544 U.S. 228, 241 (2005)), Plaintiffs here have in fact done more than simply allege a disparate impact. Specifically, Plaintiffs have "identified the" 2017 MEII as "the employment practice that has the allegedly disproportionate impact," and "establish[ed] causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." Id. at 591. Plaintiffs have therefore met the requirements set forth in Gilbreath. Id.

Moreover, the reduction in force in Gilbreath, on the advice of a consulting firm, was across a regional chain, and thus starkly different than the reduction in force at Jacobi. In Gilbreath, defendant "decided to 'in-source' the implementation of" of a consulting firm's recommendations and while defendant's Chief Executive Officer "retained ultimate veto power… he did not exercise this power.". Gilbreath, 400 F.Supp at 584. Here, Plaintiffs were all employed at one H+H Hospital and were subject to the ultimate decisionmaking power of the same group of decisionmakers. [**Exhibit Y**, pp. 28-29, 30-33; **Exhibit L**, pp. 48-50, 70-72]; Rossini, 798 F.2d at 598 (2d Cir. 1986); General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 n. 15 (1982). Further, Plaintiffs do not rely solely on the 2017 MEII, Plaintiffs also offer substantial statistical and anecdotal evidence to support their claims.

Defendants also attempt to refute Plaintiffs' statistical proof [Def. Memo in Opp. p. 16-17], however, Defendants' arguments are inappropriate at the class certification stage. Velez v. Novartis

5

Pharms. Corp.., 244 F.R.D. 243, 257-258 (S.D.N.Y. 2007) (warning against deciding which expert report was more persuasive at the certification stage); Hnot v. Willis Grp. Holdings Ltd., 241 F.R.D. 204, 211 (S.D.N.Y. 2007) ("to decide which expert report was more persuasive would be to decide whether the class was actually discriminated against by defendants. This the court [is] not required to do").  In any event, Plaintiffs' expert responded to all of Defendants' arguments already by conducting "new statistical tests, conforming as close as possible to the critiques of the Erath Report," (**Exhibit 1**, ¶ 3), and the Supplemental Report confirmed the original conclusions of disparate impact of the 2017 MEII. (**Exhibit 1**, ¶ 6).

While Defendants also argue that Dr. Thompson failed to consider non-discriminatory factors, (Def. Memo in Opp. p. 20), this is a mischaracterization of Dr. Thompson's analysis.  The Supplemental Report addressed the critique that the first report "allowed for no difference between employees other than race or age." (**Exhibit 1**, ¶ 13). After analyzing the data to conform with Defendants' objections, Dr. Thompson "found that incorporating positions into the analysis *strengthened* the discrimination claims of plaintiffs." (**Exhibit 1**, ¶ 14). Additionally, Appendix B to Dr. Thompson's original report states plainly that the materials relied on in compiling his report included "demographics, job titles, [and] work histories of relevant employees." [**Exhibit A**, Appendix B].

Moreover, Defendants' reliance on Sheehan and Fuller is unfounded. In Sheehan v. Purolator, Inc., 839 F.2d 99 (2d Cir. 1988), the court denied certification after finding plaintiffs only provided a "limited amount of other probative evidence," which did not occur here. In Fuller v. Instinet, Inc., 120 Fed. Appx. 845 (2d Cir. 2004) the court denied certification because the statistical analysis was the "sole evidence" provided and did not include non-discriminatory factors, which is not the case here. Plaintiffs offer numerous declarations in support of class certification. Selzer v. Board of Educ., 112 F.R.D. 176, 180 (S.D.N.Y. 1986) (even if statistics are inconclusive, affidavits from named plaintiffs and five proposed class members were sufficient to establish the existence of an aggrieved class). Plaintiffs' declarations also show, *inter alia*, that Defendants had previously discriminated against older

6

and non-white employees by denying raises and opportunities for promotion that other similarly situated employees were provided. (**Exhibit B,** ¶¶ 6, 7, **Exhibit I**, ¶¶ 11, 13). Plaintiffs also provide anecdotal evidence that complaints of discrimination were not properly investigated by Defendants, despite being made aware of multiple complaints of discriminatory conduct. (**Exhibit B,** ¶ 8, **Exhibit I,** ¶¶ 11, 13-14).

Plaintiffs' deposition testimony corroborates the experiences outlined in Plaintiffs' declarations. For example, Representative Plaintiff Birdsong testified that similarly situated white and younger employees were generally treated better than African-American employees and other minority employees. (**Exhibit 2**, Birdsong Deposition, pp. 95, 97-98). Plaintiff Berman detailed how her white supervisors treated her unfairly because of her age and the general culture of harassment within H+H. (**Exhibit 3**, Berman Deposition, pp. 33-36, 40-42, 67-69). Plaintiff Henry testified to witnessing his white supervisor making derogatory comments about subordinates of color, and inconsistencies in messaging regarding the layoffs and what occurred when positions were terminated. (**Exhibit 4**, Henry Deposition, pp. 38-40, 50-51). Lastly, Plaintiff Phipps provided detailed testimony regarding her white supervisors' discriminatory behavior, their treatment of similarly situated white employees compared to employees of color, allegations regarding management changing employee evaluations in order to show cause for removal, and Defendants' failure to investigate claims of discrimination. (**Exhibit 5**, Phipps Deposition, pp. 27-31, 36-40, 43-44). As such, Plaintiffs' anecdotal evidence "bring[s] the cold numbers convincingly to life," Teamsters, 431 U.S. at 339, further demonstrating that Defendants operated under a "general policy of discrimination" that "manifested itself in … the employment practice in the same general fashion." U.S. v. City of N.Y., 717 F.3d 72, 83 (2d Cir. 2013).

**B. The Class is Sufficiently Numerous**

Plaintiffs have shown, based on the data produced by Defendants, that the proposed class is comprised of 45 former Jacobi managerial employees (**Exhibit X**). While Defendants attempt to show that this number is only 38, their arguments do not rebut the fact that 45 individuals were identified by Defendants for termination, despite the fact that a small number of them may have ultimately been

7

demoted to a lower title or forced to retire, which are similarly adverse employment actions. *See*, Breyer v. County of Nassau, 524 F.3d 160 (2d Cir. 2008). Furthermore, in their attempt to show that the putative class contains 38, rather than 40, former employees, Defendants in fact admit that only "one of the individuals…selected…is both White and under the age of 40," (Def. Memo in Opp. P. 22), which only further supports Plaintiffs' claims. In any event, joinder remains impracticable given the possibility of redundant actions, contradictory rulings, and claimants' inability to seek individual relief due to lack of financial resources. *See*, Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).

### C. The Claims of the Representative Plaintiffs are Typical of the Claims of the Class

Defendants argue that because the Representative Plaintiffs' titles are not inclusive of the "numerous titles that were eligible for consideration for the MEII, they were both hired over the age of 40, and they both worked in departments that ultimately reported to only one of the Jacobi leadership responsible for selecting positions," their claims are not "typical of the entire class," thus precluding class certification. (Def. Memo in Opp. pp. 23-24).[4] Again Defendants' argument fails.

"[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably coextensive with those of absent class members; they need not be substantially identical." Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir 2010) (*citing*, Marisol A., 126 F.3d at 326). Where, as here, class members have all been subjected to defendants' discriminatory practices, a finding of typicality is warranted. Falcon, 457 U.S. at 159 n. 15.  Furthermore, typicality is not defeated even with some factual variations between class members and Representative Plaintiffs. Meyer v. Macmillan Pub. Co., 95 F.R.D. 411, 414 (S.D.N.Y.1982) ("[T]he fact that the jobs performed by the named plaintiffs are ... unique ... is not a bar to their being class representatives. If it were, no class of professional employees could ever be certified."). Here, there is no question that the issues of

---

[4] In Opposition, Defendants do not challenge Plaintiffs', or Plaintiffs' counsel's, adequacy of representation. While Defendants once state, "Plaintiffs also do not satisfy the typicality *or adequacy* requirements of Rule 23(a)," they reference "adequacy" only once and provide no substantive objection thereto. (Def. Memo in Opp. p. 23).

8

fact and law in dispute "occupy essentially the same degree of centrality." Caridad, 191 F.3d at 293; *see also* Floyd v. City of New York, 283 F.R.D. 153, 177 (S.D.N.Y. 2012). The proposed class members were all identified by Defendants for termination in the same 2017 MEII and whether such 2017 MEII resulted in an adverse impact and/or adverse treatment of class members is the only question of law and fact, the resolution of which is central to Plaintiffs' claims. Lastly, since the same group of individuals decided to terminate the proposed class members in the 2017 MEII, [**Exhibit Y**, pp. 28-29, 30-33; **Exhibit L**, pp. 48-50, 70-72]), typicality is satisfied because class members have all been subject to Defendants' conduct "in the same general fashion." Rossini, 798 F.2d at 598.

### THE CLASS MEETS THE CERTIFICATION CRITERIA PURSUANT TO 23(b)(3)

**A. Common Questions Predominate and a Class Action is the Superior Method of Resolution of these Claims**

Defendants attempt to undermine the predominance of the Representative Plaintiffs' class claims and the superiority of a class action with unavailing misrepresentations of the facts and law. Defendants claim a "litany of individualized issues as to why each position was selected for inclusion" (Def. Memo in Opp. p. 24), however the "fundamental factual issue… is subject to generalized proof," including the statistical and anecdotal evidence, testimony, and documents attached here. Koss v. Wackenhut Corp, 2009 WL 928087, at *11 (S.D.N.Y. Mar. 30, 2009). Therefore, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." In re Visa Check / MasterMoney Antitrust Litig., 280 F.3d 126, 136 (2d Cir. 2001). "When determining whether common questions predominate courts focus on the liability issue[,] and if the liability issue is common to the class, common questions … predominate[.]" Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002). As discussed *supra*, the common questions here "predominate" because the claims are all based on the same process, Defendants' 2017 MEII. Rossini, 798 F.2d at 599.

9

Further, even if there were individualized defenses, which "may affect different class members differently," this will not defeat predominance. Visa Check, 280 F.3d at 139. Nor will differences in damages. See Barone v. Safeway Steel Products, Inc., 2005 WL 2009882, at *5 (E.D.N.Y. Aug. 23, 2005); Mendez v. Radec Corp., 232 F.R.D. 78, 93 (W.D.N.Y. 2005) (predominance is satisfied when the challenged policies "have been applied in a more or less uniform fashion to [all] employees").

While Defendants also argue that a class action is not the superior method for resolving this dispute, Defendants make the same argument that was rejected in Mendez—that "there is a need for a significant number of separate trials," and as such "the class action is unmanageable." (Def. Memo in Opp. p. 25). As the court found in Mendez, "defendant's assertion that the necessity of conducting a series of mini-trials will render a class action unmanageable is an insufficient reason for denying class certification." 232 F.R.D. at 93. Furthermore, "[D]efendants have not identified what [] individual defenses would" need to be litigated and this court should not be persuaded by Defendants' "conclusory assertion" that each Plaintiff's layoff requires inquiry into whether their termination was tainted with bias and whether nondiscriminatory reasons justify the layoff. Id. at 92. The issue here is whether the 2017 MEII as a whole was tainted with discriminatory bias, and whether there was a disparate impact on Plaintiffs. Lastly, many of the class members do not have the means to initiate their own individual actions. In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 230 (2d Cir. 2006).

## CONCLUSION

As such, Plaintiffs respectfully request that the Court grant the following relief: 1) certify the class defined herein; 2) appoint Annette Birdsong and Herbert Richardson as Class Representatives, and 3) appoint of The Kurland Group as Class Counsel.

Dated:  April 18, 2022

                                                //~s~//
                                    Erica T. Healey-Kagan (EK-0425)
                                    THE KURLAND GROUP
                                    *Attorneys for Plaintiffs*
                                    85 Broad Street, 28th Floor
                                    New York, New York 10004