UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CLARENCE BOWEN ALLEN, BRENDA BERMAN,
ANNETTE BIRDSONG, WILLIAM HENRY, JOSE
JACOB, JACQUELINE KING, SUSAN LAMONICA,
JEAN PHIPPS, ROSLYN PRESS, HERBERT
RICHARDSON, VIRGINIA TUFARO, on behalf of
themselves and on behalf of all other similarly situated
individuals,

                    Plaintiffs,                    19-CV-3786 (JMF)

        -against-


THE CITY OF NEW YORK and NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION,

                    Defendants.

------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE**

**EXPERT TESTIMONY AND FOR PARTIAL SUMMARY JUDGMENT**


THE KURLAND GROUP
*Attorneys for Plaintiffs*
85 Broad Street, 28th Floor
New York, New York 10004
(212) 253-6911

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………………...ii

PRELIMINARY STATEMENT…………………………………………………………………...1

FACTUAL BACKGROUND…………………………………………………………………..4

PLAINTIFFS…………………………………………………………………………...6

ARGUMENT……………………………………………………………………………11

I.     THE TESTIMONY OF DEFENDANTS' EXPERT, DR. CHRISTOPHER ERATH,
      MUST BE EXCLUDED BECAUSE IT IS UNRELIABLE AND IRRELEVANT…11

     A. Legal Standard…………………………………………………………………...11

     B. Dr. Erath's Expert Report is Unreliable and Speculative and Must be Excluded..13

     C. Dr. Erath's Report and Testimony is Irrelevant and Unhelpful to the Factfinder
        and Must Therefore be Excluded…………………………………………….…….15

II.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT….……18

     A. Legal Standard……………………………………………………….…………..18

     B. Plaintiffs are Entitled to Summary Judgment as to Their Disparate Impact Claims
        of Age Discrimination Pursuant to the ADEA…………………….……………18

     C. Plaintiffs are Entitled to Summary Judgment as to Their Disparate Impact Claims
        of Age Discrimination Pursuant to the NYS HRL and NYC HRL………………21

     D. Plaintiffs' Bowen Allen, Birdson, Henry, Jacob, King, Phipps, and Richardson are
        Entitled to Summary Judgment as to Their Disparate Impact Claims of Race
        Discrimination…………………………………………………………………22

     E. Plaintiffs are Entitled to Summary Judgment as to Their Breach of Contract
        Claims……………………………………………………………………………23

     F. Plaintiffs are Entitled to Summary Judgment as to Their 42 U.S.C. §1983
        Claims……………………………………………………………………………24

CONCLUSION…………………………………………………………………………..26

# TABLE OF AUTHORITIES

**Page(s)**:

**Cases:**

Amorgianos v. Nat'l R.R. Passenger Corp.,
  303 F.3d 256 (2d Cir. 2002)……………………………...…………………………………..12

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)………………………………………………………………………………18

Arista Records LLC v. Lime Grp. LLC,
  2011 WL 1674796 (S.D.N.Y. May 2, 2011)…………………………………………………12

Back v. Hastings on Hudson Union Free Sch. Dist.,
  365 F.3d 107 (2d Cir. 2004)……………………………...…………………………………..24-25

Betances v. Fischer,
  2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021)…………………………………….……………13

Bocoum v. Daimler Trucks North America, LLC,
  2022 WL 902465 (S.D.N.Y. March 28, 2022)………………………………………………14

Chen-Oster v. Goldman, Sachs & Co,
  No. Civ. 6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022)………………….....……14, 15, 17

Chin v. Port Auth. of New York and New Jersey,
  685 F.3d 135 (2d Cir. 2012)…………………………………………………………………21

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993)………………………………………………….………………11, 12, 13, 14, 15

D.C. 37, et al. v. New York City Dept. of Parks and Recreation, et al.,
  113 F.3d 347 (2d Cir. 1997)…………………………………………………….………………20

Demoret v. Zegarelli,
  451 F.3d 140 (2d Cir.2006)……………………………………………………………………24

De Petris v. Union Settlement Assoc.,
  86 N.Y.2d 406 (1995)………………………………………………………………….……….23

Electra v. 59 Murray Enters.,
  987 F.3d 233 (2d Cir. 2021)…………………………………………………………….……….13

Feingold v. New York,
  366 F.3d 138 (2d Cir. 2004)…………………………………………………………………21

Fujitsu Ltd. v. Fed. Express Corp.,
  247 F.3d 423 (2d Cir. 2001)…………………………………………………………………18

General Electric Co. v. Joiner,
    522 U.S. 136 (1997)……………………………………………………….……..13, 14

Guichard v. Town of Brookhaven,
    26 F.Supp.3d 219 (E.D.N.Y. 2014)………………………………………………………..25

In re Resulin Prod. Liab. Litig.,
    369 F.Supp.2d 398 (S.D.N.Y. 2005)…………………………………………………...……14

Jennings v. NYS Office of Mental Health,
    786 F. Supp. 376 (S.D.N.Y. 1992)………………………………………………………...19

Jones v. Dunkirk Radiator Corp.,
    21 F.3d 18 (2d Cir.1994)………………………………………………………………….23

Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,
    964 F.2d 106 (2d Cir. 1992)………………………………………………………...……18

Marfia v. T.C. Ziraat Bankasi,
    147 F.3d 83 (2d Cir. 1998)………………………………………………………...……23

Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)………………………………………………………………….....18

Meacham v. Knolls Atomic Power Laboratory,
    554 U.S. 84 (2008)……………………………………………………..…………………18

Monell v. Dep't of Soc. Services of City of New York,
    436 U.S. 658 (1978)………………………………………………………………………25

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005)………………………………………………………………12

N.K. v. Abbott Labs.,
    731 Fed. App'x 24 (2d Cir. 2018)…………………………………………………………11

PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc.,
    16 N.Y.S. 3d 298, 299-300 (2d Dept. 2015)……………………………………………23

Ricci v. DeStefano,
    557 U.S. 577 (2009)………………………………………………………………………22

Robinson v. Metro–North Commuter R.R. Co.,
    267 F.3d 147 (2d Cir.2001)………………………………………………………………..21

Smith v. City of Jackson,
    544 U.S. 228 (2005)………………………………………………………………………18

United States v. Khan,
    787 F.2d 28 (2d Cir. 1986)…………………………………………………………15, 17

United States v. Mulder,
    273 F.3d 91, 104 (2d Cir. 2001)……………………………………………………..………….12

United States v. Romano,
    794 F.3d 317 (2d Cir. 2015)…………………………………………………………………….12

United States v. Williams,
    506 F.3d 151, 160 (2d Cir. 2007)…………………………………………..……………….11, 12

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)…………………………………………………….……………..24

Vivenzio v. City of Syracuse,
    611 F.3d 98 (2d Cir. 2010)……………………………………………………….....……22

Wallach v. New York City Health and Hospitals Corp.,
    2023 WL 3123180 (N.Y. Sup. Ct. Apr. 27, 2023)…………………………….....………..2

Weiner v. McGraw–Hill, Inc.,
    57 N.Y.2d 458 (1982)…………………………………………………………………………..23

**Statutes and Rules**:

29 C.F.R. § 1625.7………………………………………………………………………………18-19

29 U.S.C.A. §623……………………………………………………………………...1, 2, 18, 21, 26

42 U.S.C. § 1983………………………………………………………………………1, 3, 4, 11, 24, 26

42 U.S.C. § 2000…………………………………………………………………………………1, 22

Admin Code of the City of New York § 8-101………………………………………………1, 21, 22

FRCP 26(a)(2)…………………………………………………………………………………..2, 3

FRCP 56………………………………………………………………………………………1, 26

FRE 702…………………………………………………………………………1, 3, 11, 12, 14

N.Y. Civ. Serv. Law §65………………………………………………………………………….20

N.Y. Civ. Serv. Law §80………………………………………………………………………….20

N.Y. Executive Law §290……………………………………………………………..1, 21, 22, 26

N.Y.C. Local Law No. 85 § 1…………………………………………………………………22

Plaintiffs Clarence Bowen Allen, Brenda Berman, Annette Birdsong, William Henry, Jose Jacob, Jacqueline King, Susan LaMonica, Jean Phipps, Roslyn Press, Herbert Richardson, and Virginia Tufaro (hereinafter "Plaintiffs") submit this Memorandum of Law in support of their motion against Defendants City of New York ("City") and New York City Health and Hospitals Corporation ("H+H," and collectively "Defendants") (1) to exclude the report and testimony of Defendant's expert, Dr. Christopher Erath, pursuant to Federal Rule of Evidence ("FRE") 702 and (2) for partial summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56 as to Plaintiffs' disparate impact claims regarding Defendants' violations of the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), 29 U.S.C.A. §623, *et seq.*; Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000, *et seq.*; the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*; and the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.*, as well as 42 U.S.C. §1983 and Breach of Contract.

## PRELIMINARY STATEMENT

This action was initiated in 2018 by eleven (11) managers who had been employed by Defendants at Jacobi Hospital (hereinafter "Jacobi"), many of whom for more than two decades, before they were summarily terminated. [**Exhibit A; Exhibit B**].  In 2016, in response to pressure to remedy a financial crisis in the New York City public hospital system, Defendants developed a well-intended but misguided plan to lay off employees, who were predominantly older and people of color, and attempt to attract new patients and a new client base to the City's public healthcare system. [*See* **Exhibit C**, One New York Health + Hospitals Transformation Plan (hereinafter "One New York Plan)].  Plaintiffs allege that as a result of the implementation of Defendants' One New York Plan, Plaintiffs were wrongfully terminated in violation of the ADEA, Title VII, NYS HRL,

NYC HRL, and the Fourteenth Amendment of the U.S. Constitution.  This One New York Plan has also resulted in numerous other litigations regarding claims of discrimination, including at least one (1) other collective action.  In specific, Wallach v. New York City Health and Hospitals Corporation, Index No. 156269/2018, recently certified a class of managers working for Defendants to move forward on its claims of age discrimination pursuant to the New York City Human Rights Law. Wallach v. New York City Health and Hospitals Corp., 2023 WL 3123180 (N.Y. Sup. Ct. Apr. 27, 2023).  Plaintiffs in the instant action also allege age discrimination as well as race discrimination in the termination of their employment from Jacobi Hospital, which is located in the Bronx. [**Exhibit B**].

On December 4, 2017, Plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging the One New York Plan violated federal, state and local law, including but not limited to the ADEA, Title VII, NYS HRL, NYC HRL, and the Fourteenth Amendment of the U.S. Constitution. [**Exhibit D**].  On September 15, 2018, the EEOC issued Notices of Right to Sue to Plaintiffs. [**Exhibit E**].

On December 13, 2018, Plaintiffs initiated the instant litigation in New York State Supreme Court, New York County. [ECF No. 1-1].  On April 29, 2019, Defendants removed the action to federal court in the Southern District of New York.  [ECF No. 1].  Thereafter, on July 31, 2019, Defendants advised the Court of their intention to move to dismiss under FRCP 12(b)(6) [ECF No. 11].  After attending a conference with the late-Judge Pauley, who then presided over this case, Defendants elected not to file a motion to dismiss and on October 30, 2019 instead filed an Answer [ECF No. 24].  Parties engaged in extensive discovery, including the exchange of expert discovery pursuant to FRCP 26(a)(2).

On May 17, 2021, Plaintiffs produced the initial report of their expert witness, Dr. Shane Thompson, which provided substantial evidence of the discriminatory impact Defendants' layoff initiative had.  [**Exhibit F**].  While Defendants' expert witness, Dr. Christopher Erath, produced an initial report on August 11, 2021, Dr. Erath's report does not satisfy the requirements of Federal Rule of Evidence 702 because it offers no statistical analyses or methodology to either support his conclusions or refute Plaintiffs' Expert Report.  **[Exhibit G**]. Dr. Erath's conclusions are also irrelevant and unhelpful to the factfinder and therefore should not be considered by the Court. However, even if the Court considers Dr. Erath's report, Dr. Thompson produced a rebuttal report pursuant to FRCP 26(a)(2)(D)(ii) on September 9, 2021, which is unrebutted by Defendants and provides even more significant evidence of the discriminatory impact Defendants' layoff initiative had. [**Exhibit H**].

After the completion of discovery, Plaintiffs moved for class certification. [ECF No. 70-72].  In its decision on class certification, the Court denied the motion, determining that numerous questions of fact existed regarding Plaintiffs' disparate treatment claims of discrimination, finding a "litany of individualized issues…including why (and by whom) each position was selected for inclusion in the relevant MEII, whether each of those determinations was tainted with bias, [and] whether Defendants had legitimate, non-discriminatory reasons for each of them".  [ECF No. 79].

The Court also granted parties the opportunity to seek summary judgment, for which Plaintiffs hereby move on a partial basis.  Plaintiffs only seek summary judgment as to Plaintiffs claims of disparate impact, §1983, and breach of contract, because the "litany" of issues and related questions of facts the Court identified regarding the individual Plaintiffs' claims of disparate treatment must first be resolved by the trier of fact before judgment can be issued as to Plaintiffs' disparate treatment claims.  However, because of the statistical findings of Dr. Thompson, and

other factual evidence which is unopposed as discussed herein, the Court can and should grant Plaintiffs motion for partial summary judgment as to their claims of disparate impact on the basis of age and race, as well as their §1983 claims and claims for breach of contract.

## FACTUAL BACKGROUND

As Plaintiffs assert in their First Amended Complaint [**Exhibit A**], and as the evidence confirms, in 2016 "[New York City] Mayor de Blasio, in a purported effort to respond to [financial] problems [at H+H hospitals], announced the 'One New York Health + Hospitals Transformation Plan.'" [hereinafter "One New York Plan," **Exhibit A**, ¶ 18**; Exhibit C**]. Part of the One New York Plan included the creation of H+H's Office of Transformation, which was tasked with developing the criteria and implementation of "[t]his rebranding initiative…to stabilize H+H hospitals like Jacobi while increasing the quality of services and providing a greater market share of the health care industry for H+H." [**Exhibit A**, ¶ 18**; Exhibit C**]. This initiative was first known as Defendants' "Workforce Reduction Approach," which was jointly implemented "by H+H's central office in connection with the City of New York" [**Exhibit A**, ¶ 30; **Exhibit I; Exhibit J**, deposition of Defendants' 30(b)(6) witness James Matthew Fay, p. 65**; Exhibit V**, deposition of Christopher Mastromano p. 110-112], and then became known as the Managerial Efficiency Improvement Initiative, or "MEII." [**Exhibit J**, pp. 27-31]. As Defendants' 30(b)(6) witness confirmed, the MEII was "one pillar of the transformation plan," for which the One New York Plan was the "foundational document." [**Exhibit J**, 29:11, 30:13]. The One New York Plan's "layoff initiative sought to give Jacobi [and other H+H hospitals] the desired rebranded image— namely a young, white, fresh look to compete in New York City's more upscale emerging private health care facilities." [**Exhibit A**, ¶ 23**; Exhibit C**].

4

"[R]egardless of their intent, [however,] Defendants engaged in a layoff initiative that had an adverse impact on non-white and older employees in violation of the law." [**Exhibit A**, ¶ 25; **Exhibit F; Exhibit H**].  As Defendants' 30(b)(6) witness explained, the One New York Plan's layoff initiative constituted "one management restructuring effort" in 2017, during which Defendants gradually provided "more specific guidance…in order to achieve the objective." (**Exhibit J**, 100:17-101:3).  By using accepted methods of analysis, Plaintiffs' expert confirmed the statistically significant impact which the One New York Policy's layoff initiative had on the basis of race and age. [**Exhibit H**].  In specific, Dr. Thompson explained in his Report dated September 9, 2021 [**Exhibit H**], an analysis using both univariate and multivariate statistical tests showed that:

a. There is statistically significant evidence that age was a factor in Defendants' 2017 layoffs;

b. There is statistically significant evidence that employees over-40 were more likely to be terminated than those under-40;

c. There is statistically significant evidence that black employees were terminated with higher likelihood than their non-black peers; and

d. There is no statistically significant evidence that termination decisions varied based on corporate title. [**Exhibit H**].

Therefore, as discussed further herein, Plaintiffs have established their disparate impact claims of age and race discrimination because they have identified Defendants' One New York Plan and its layoff initiative, the MEII, caused the statistically significant disparities on the basis of age and race as identified in Dr. Thompson's report.  Furthermore, Defendants have numerous

employment policies which limit Defendants' ability to terminate the Plaintiffs under these circumstances, the evidence establishes that Defendants violated these policies, which entitle Plaintiffs to relief for breach of contract. (**Exhibit K**; **Exhibit L; Exhibit M**).

## **PLAINTIFFS**

Clarence Bowen-Allen is an African-American who was 60 years old when Defendants terminated his employment as Associate Director of Budget and Director of Accounts Payable in June 2017 as part of Defendants' MEII. [**Exhibit N**, pp. 33-35].  At trial, Mr. Bowen-Allen will prove that prior to his termination, Mr. Bowen-Allen was denied a raise by his then supervisor, a white woman substantially younger than him, while others received pay increases, and while he made complaints regarding such selective and discriminatory treatment, Defendants took no action to remedy it and instead terminated Mr. Bowen-Allen. [**Exhibit N**, pp. 22-25]. Based on his age and race, Mr. Bowen-Allen was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Brenda Berman was 54 years old when Defendants terminated her employment as Personnel Director in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 1-2]. At trial, Ms. Berman will prove that despite being told her position was being "abolished," another employee was offered her position after her termination. [*See*, Id.].  Prior to her termination, Ms. Berman faced hostility and mistreatment by her supervisor, Joann Sampson, which included denying her opportunities and benefits to which she was entitled before ultimately deciding to include Ms. Berman in the layoffs. [**Exhibit O**, pp. 40-60]. Based on her age, Ms. Berman was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Annette Birdsong is an African American who was 60 years old when Defendants terminated her employment as Executive Secretary in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 3-5]. At trial, Ms. Birdsong will prove that prior to Ms. Birdsong's termination, she was subjected to verbal abuse and harassment by her supervisors on the basis of her age, race, and ethnicity and while she complained to Human Resources, no action was taken. [*See*, <u>Id</u>.]. Thereafter, Ms. Birdsong filed a complaint with Defendants' Equal Employment Office, which was still pending when Ms. Birdsong's employment was terminated. [*See*, <u>Id</u>.]. Based on her age and race, Ms. Birdsong was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

William Henry is African American and was 70 years old when Defendants terminated his employment as Associate Director of Telecommunications in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 6-7]. At trial, Mr. Henry will prove that he was never personally advised of his termination, in violation of Defendants' termination procedures and Defendants posted a job opening for his position despite claiming it would be eliminated. [*See*, <u>Id</u>.]. Further, Mr. Henry had successfully implemented and managed telecommunications activities, projects, and networks on national and global scales for over 30 years before working at Jacobi. [**Exhibit P**, pp. 42-43; 76-78]. Therefore, if Defendants were truly concerned with efficiency in telecommunications strategies, Mr. Henry was the best positioned manager to develop and implement potential strategies and his position would have survived the layoffs under Defendants' stated criteria. [**Exhibit O**, pp. 50-51; 52-54]. Mr. Henry was also substantially older than the remaining managers in the IT Department when his employment was terminated. [**Exhibit P**, pp. 32, 52-54]. Based on his age and race, Mr. Henry was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

7

Jose Jacob is Asian and he was 52 years old when Defendants terminated his employment as Associate Director in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 8-9]. At trial, Mr. Jacobs will prove that the broad scope of his duties and responsibilities prior to his termination establishes the unreasonable nature of Defendants' alleged justification of basing its layoff decisions on job title without reference to the substance of the position or the caliber of the employee occupying it. [**Exhibit Q**, pp. 37-40]. Based on his age and race, Mr. Jacob was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Jacqueline King is an African American who was 61 years old when Defendants terminated her employment as Associate Director of Nursing in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 10-11]. At trial, Ms. King will prove that after her termination, and the alleged elimination of her position, Defendants hired white individuals who were younger than Ms. King to perform her job. [*See*, Id.]. Based on her age and race, Ms. King was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Susan LaMonica was 60 years old when Defendants terminated her employment as Director of Nursing in February 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 12-13]. At trial, Ms. LaMonica will prove that just months prior to her termination, she had discussed her imminent retirement with the Chief Nursing officer, Suzanne Pennacchio, who was then one of the individuals responsible for terminating Ms. LaMonica. [**Exhibit R**, pp. 66-72]. Based on her age, Ms. LaMonica was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Jean Phipps is an African American who was 44 years old when Defendants terminated her employment as Assistant Director of Nursing in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 14-16]. At trial, Ms. Phipps will prove that prior to her termination, she and other people of

8

color were denied raises and opportunities for promotion as well as undermined in their annual performance evaluations. [*See*, Id.]. Based on this mistreatment, Ms. Phipps filed a complaint of discrimination with Defendants' Equal Employment Office, which was still pending when Ms. Phipps' employment at Jacobi was terminated. [*See*, Id.]. Based on her age and race, Ms. Phipps was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Roslyn Press was 67 years old when Defendants terminated her employment as Assistant Director of Hospitals in June 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 17-18]. Ms. Press will prove at trial that after her termination, her prior duties and responsibilities were assumed by a substantially younger employee, more than twenty (20) years her junior. [**Exhibit S**, pp. 80-82]. Based on her age, Ms. Press was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Herbert Richardson is an African American who was 61 years old when Defendants terminated his employment as Associate Director of Support Services in February 2017 as part of Defendants' MEII. [**Exhibit B**, pp. 19-20]. Mr. Richardson will prove at trial that prior to his termination, he had requested a salary increase commensurate with the numerous additional job duties he was being assigned, including taking on daily operations functions for both Jacobi and North Central Bronx Hospital. [**Exhibit T**, pp. 25-28; 32-37]. However, this requested salary increase was never granted and instead, Mr. Richardson was terminated. [**Exhibit T**, pp. 25-28]. Based on his age and race, Mr. Richardson was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

Virginia Tufaro was 65 years old when Defendants terminated her employment as Assistant Director of Nursing in June 2017 as part of Defendants' MEII after targeting her for unfounded negative performance critiques. [**Exhibit B**, pp. 21-22]. Ms. Tufaro will prove at trial that prior to

her termination, Ms. Tufaro was questioned for her need to take FMLA leave to both care for her ailing father and for her own health issues. [**Exhibit U**, pp. 34-38]. Within 6 weeks of her termination, Plaintiff Tufaro's exact position, including title and job description was posted and a new employee was hired to do my job, proving it was not in fact eliminated as Defendants claimed. [**Exhibit U**, pp. 55-56].   Based on her age, Ms. Tufaro was also disparately impacted by Defendants' One New York Plan and its layoff initiative.

In making the decision to terminate Plaintiffs, Defendants did not properly consider whether employees were temporary or permanent, employees' years of experience, whether employees were close to retirement, and whether employees had pending EEO complaints, contrary to local, state, and federal law [**Exhibit V**, pp. 83, 116, 118; **Exhibit W**, Deposition of James Matthew Fay, Vol. I, pp. 117-118; **Exhibit X**, Deposition of Suzanne Pennachio, pp. 46-48]. Defendants also made these decisions based on a cost savings target, which led them to target higher-paid employees in order to meet the target.  These higher-paid employees are, on average, older than the employees who were not terminated. [**Exhibit W**, Deposition of James Matthew Fay, Vol. I, pp. 98-103; *see also* **Exhibit F; Exhibit H**]

Lastly, while Defendants' stated position was that they would not backfill the positions of the employees who were terminated, Defendants did not eliminate these positions and in fact affirmatively worked to re-fill many of them by, among other things, advertising the positions Plaintiffs previously held.  [**Exhibit Y**].  Furthermore, many of the individuals who filled the positions Plaintiffs previously held were younger and/or white. [**Exhibit B**].  As such, while the Court found numerous questions of fact regarding Plaintiffs' disparate treatment claims, Plaintiffs are confident in their ability to prove these facts at trial.  However, in the instant motion, the

evidence establishes Plaintiffs' claims of disparate impact on the basis of age and race, as well as violations of §1983 and breach of contract.

## ARGUMENT

**I.    THE TESTIMONY OF DEFENDANTS' EXPERT, DR. CHRISTOPHER ERATH, MUST BE EXCLUDED BECAUSE IT IS UNRELIABLE AND IRRELEVANT**

Dr. Erath's Expert Report, dated August 11, 2021, does not satisfy the requirements of FRE 702 and is therefore inadmissible. "As gatekeeper, the district court has significant discretion to consider numerous factors" in applying FRE 702. N.K. v. Abbott Labs., 731 Fed. App'x 24, 26 (2d Cir. 2018). For the reasons discussed herein, the Court should exercise that discretion to exclude Dr. Erath's report and his deposition testimony regarding same.

### A.  Legal Standard

The admissibility of expert testimony is governed by FRE 702, which states that an expert qualified "by knowledge, skill, experience, training, or education may testify" if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case." FRE. 702; *see also*, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Moreover, "the Rules – especially Rule 702 – place appropriate limits on the admissibility of purportedly scientific evidence by assigning to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 579-580. "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

Assessing a motion to exclude expert testimony requires a court to first address "the threshold question of whether a witness is 'qualified as an expert… to render his or her opinions.'" Nimely v. City of New York, 414 F.3d 381, 396 n. 11 (2d Cir. 2005) (*quoting*, FRE 702). Next the court assesses the proffered expert testimony's reliability, considering "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the degree of acceptance' within the 'relevant scientific community.'" United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015) (*quoting* Daubert, 509, U.S. at 593-94). Though this inquiry is "tied to the facts of a particular case," Daubert, 509 U.S. at 591, "'the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.'" Williams, 506 F.3d at 160 (*quoting*, Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002)). A court should only exclude expert testimony if flaws in the expert's reasoning or methodology are "large enough that the expert lacks good grounds for his or her conclusions." Amorgianos, 303 F.3d at 267.

Finally, the court must determine whether the expert's testimony will assist the trier of fact. Nimely, 414 F.3d at 397. The testimony must be relevant and "[a] court should not admit expert testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" Arista Records LLC v. Lime Grp. LLC, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011) (*quoting* United States v. Mulder, 273 F.3d 91, 104 (2d Cir. 2001)).

**B.  Dr. Erath's Expert Report is Unreliable and Speculative and Must be Excluded**

Dr. Erath's conclusions in his Report, dated August 11, 2021, offer no statistical analyses or methodology to support his conclusions or refute Plaintiffs' Expert Report provided by Dr. Shane Thompson, dated May 17, 2021. As such, Dr. Erath's Expert Report is inadmissible because experts "may not simply offer conclusory opinions." Betances v. Fischer, 2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021) (noting "conclusory opinions are a form of 'ipse dixit,' and often provide an insufficient basis upon which to assess reliability."); *see also*, General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

Dr. Erath's Report makes four conclusions regarding Dr. Thompson's Expert Report. Specifically, Dr. Erath concludes "that [Dr. Thompson's] statistical tests are (1) based on a flawed sample including double-counting nearly all people; (2) inconsistent with plaintiffs' complaint; (3) inconsistent with facts concerning the two 2017 managerial reductions; and therefore (4) incapable of providing statistical evidence for or against plaintiffs' allegations." [**Exhibit G**, p. 1]. However, as Dr. Thompson's rebuttal report, dated September 9, 2021, demonstrates, Dr. Erath had all the data that [Dr. Thompson] did, but did not conduct any statistical analyses to refute [Dr. Thompson's] findings." [**Exhibit H**, p. 1].

Thus, Dr. Erath's conclusion that Dr. Thompson's original analysis was incapable of providing statistical evidence for or against plaintiffs' allegations is entirely speculative because Dr. Erath did not try to determine if additional, or different, analyses would have made a difference. [**Exhibit G**, p. 1]. Speculative testimony is not helpful to the Court and should be excluded. *See* Electra v. 59 Murray Enters., 987 F.3d 233, 254 (2d Cir. 2021) (explaining that "expert testimony should be excluded if it is speculative or conjectural" and affirming exclusion of expert report "as speculative and methodologically unreliable."); *see also*, Daubert, 509 U.S. at 590 (noting, "the

word 'knowledge'" in FRE 702 "connotes more than subjective belief or unsupported speculation").

As noted by Dr. Thompson, "Dr. Erath had all the data [Dr. Thompson] did but did not conduct any statistical analyses to refute [Dr. Thompson's] findings. Instead, he alleged that [Dr. Thompson's] analyses relied on flawed or incomplete assumptions." [**Exhibit H**, p. 1]. Importantly, Dr. Erath did not provide any methodological explanation connecting his conclusions to the data, thus there is "too great an analytical gap between the data and the opinion proffered." *See* Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); *see also*, Chen-Oster v. Goldman, Sachs & Co, No. Civ. 6950, 2022 WL 814074, at *18 (S.D.N.Y. Mar. 17, 2022) (excluding an expert's conclusory opinion); In re Resulin Prod. Liab. Litig., 369 F.Supp.2d 398, 426 (S.D.N.Y. 2005) (excluding an expert opinion where the expert failed to offer an explanation of her methodology); Bocoum v. Daimler Trucks North America, LLC, 2022 WL 902465, at *12 (S.D.N.Y. March 28, 2022) (excluding expert testimony that "does not appear to be based on a reliable methodology" where the expert "offer[ed] no cognizable methodology to bridge the logical gap between [the] facts and his conclusion"). Similar to Joiner, exclusion of the *ipse dixit* of Dr. Erath is warranted given the analytical gap between the data Dr. Erath examined and the opinion proffered in that no explanation was provided as to how Dr. Erath manipulated the data to reach his conclusions. Joiner, 522 U.S. at 146. Moreover, similar to the expert in Chen-Oster, Dr. Erath "does not provide a sufficient explanation" as to how he arrived at his conclusions, and as such "the Court cannot conclude that [his] methodology is reliable" or whether "the data supports [his]" conclusions. Chen-Oster, 2022 WL 814074, at 6. In fact, even "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that

reasoning or methodology can be applied to the facts in issue" is impossible in this case because Dr. Erath did not provide a methodology to assess. *See*, <u>Daubert</u>, 509 U.S. at 592-93.

Because Dr. Erath does not provide a testable methodology, let alone one with a knowable rate of error or standards governing its application, his opinion is inadmissible. *See* <u>Daubert</u>, 509 U.S. at 593-94 (listing considerations in assessing methodological reliability). In the instant matter, Dr. Erath's Report is void of any methodological explanation for his conclusions making it impossible to assess whether it "can be (and has been) tested." <u>Id</u>. at 593. As such, Dr. Erath's Expert Report must be excluded as unreliable.

### C. Dr. Erath's Report and Testimony is Irrelevant and Unhelpful to the Factfinder and Must Therefore be Excluded

Setting aside the fact that Dr. Erath provides no methodology or scientific explanation for his conclusions, Dr. Erath's Report and Testimony are further inadmissible because they are irrelevant and unhelpful to the fact finder. *See*, <u>Chen-Oster</u>, 2022 WL 814074, at \*4 ("Expert evidence is not immune from the relevance requirement of Federal Rule of Evidence 401.") (*citing*, <u>United States v. Khan</u>, 787 F.2d 28, 34 (2d Cir. 1986)).

Dr. Erath's Report critiques Dr. Thompson's original report by concluding (1) "Dr. Thompson's results are invalid because they rely on a sample which double counts most, but not all, employees"; (2) that "each of [Dr. Thompson's] tests is based on a flawed sample and does not address the allegations in plaintiffs' complaint"; and (3) each of Dr. Thompson's "tests rests on the inaccurate assumption that every employee in his data set faced an identical risk of having her or his position selected for reduction, and this assumption is at odds with available information on how the MEII I and MEII II reductions were conducted at Jacobi." [**Exhibit G**, pp. 2; 7].

Regarding Dr. Erath's critique that Dr. Thompson "double counted most of the Group 11 employees… Dr. Erath disregarded the fact that double counting employees would not change the magnitude of [Dr. Thompson's] discrimination findings in any material way, it would merely affect statistical precision of the result." [**Exhibit H**, p. 3]. Additionally, after correcting for double-counting, Dr. Thompson still found "statistically significant evidence of age discrimination." [**Exhibit H**, p. 3].

Next, Dr. Erath criticized Dr. Thompson's Expert Report stating that "had Dr. Thompson performed a statistical test on the group 11 employees comparing selection rates of over 40 and under 40, he would have found no statistically significant difference in the selection rates of those over and under 40." [**Exhibit G**, p. 3]. In response, Dr. Thompson did conduct that test, "conforming exactly to Dr. Erath's suggestion," and still found "there is statistically significant evidence at the 10% level that employees over-40 were more likely to be terminated than employees under-40." [**Exhibit H**, p. 4].

Finally, Dr. Erath alleged that Dr. Thompson allowed "for no difference between employees other than race or age… an assumption [] inconsistent with all available information concerning the MEII I and MEII II reductions" which therefore invalidated Dr. Thompson's statistical analyses. [**Exhibit G**, pp. 4-6]. Again, Dr. Thompson "ran the test conforming to Dr. Erath's allegation." [**Exhibit H**, p. 5]. Dr. Thompson's findings after conforming to Dr. Erath's critiques "*strengthened* the discrimination claims of plaintiffs." [**Exhibit H**, p. 5].

In sum, in response to each of Dr. Erath's critiques, Dr. Thompson conducted "new statistical tests, conforming as close as possible to the critiques of the Erath Report." [**Exhibit H**, p. 2]. Importantly, "[t]he Erath report changes none of [Dr. Thompson's] opinions." [**Exhibit H**, p. 1]. Dr. Thompson's updated statistical testing "reinforce[d] the findings of age

discrimination…and strengthen[ed] the evidence of race discrimination." [**Exhibit H**, p. 2]. Not only did Dr. Erath provide no methodology or scientific explanation for his conclusions, but Dr. Thompson ran the tests Dr. Erath suggested and still "found that the statistical evidences of age discrimination and race discrimination are *stronger* than they were in the original Thompson Report. [**Exhibit H**, p. 6]. As such, Dr. Erath's opinions are not helpful to the factfinder, and his critiques are no longer applicable. *See*, Chen-Oster, 2022 WL 814074, at *4 ("expert evidence is not immune from the relevance requirement of the Federal Rule of Evidence 401.") (*citing*, United States v. Khan, 787 F.2d 28, 34 (2d Cir. 1986)).

Dr. Erath's critiques of Dr. Thompson's Expert Report have been corrected by the analyses and data provided in Dr. Thompson's Rebuttal Report. Dr. Thompson's Rebuttal Report is clear that "the Erath Report changed none of his opinions" and Dr. Thompson's "findings from the updated statistical testing reinforced and strengthened" the findings in Dr. Thompson's Expert Report. [**Exhibit H**, pp. 6-7]. As such, Dr. Erath's Expert Report is irrelevant as it is no longer applicable, and therefore inadmissible.

In the absence of Dr. Erath's Expert Report, Plaintiffs' instant motion for partial summary judgment must be granted. However, even if the Court accepts Dr. Erath's Expert Report, which for the reasons explained, it should not, the Court must still grant Plaintiffs' motion for partial summary judgment because the findings of disparate impact in Plaintiffs' Expert Report is unrebutted by Defendant as explained *infra*.

## II.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law...[f]actual disputes that are irrelevant or unnecessary will not be counted." Id., at 255. In determining whether summary judgment is appropriate, all ambiguities and reasonable inferences are resolved in favor of the non-movant, yet the "mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient. . ." The non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts," Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) and "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).

### B.  Plaintiffs are Entitled to Summary Judgment as to Their Disparate Impact Claims of Age Discrimination Pursuant to the ADEA

As Dr. Thompson's unrebutted analysis makes clear, Defendants' layoff policy resulted in a disparate impact as to age, which violates the ADEA. *See, e.g*., Smith v. City of Jackson, 544 U.S. 228 (2005); Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 115 (2d Cir. 1992).  In claiming an exemption from such liability, Defendants bear both the burden of production and the burden of persuasion to prove that the conduct at issue was based on reasonable factors other than age and race. *See* Meacham v. Knolls Atomic Power Laboratory, 554 U.S. 84 (2008). To establish such a defense, Defendants must show that their layoff policy "was both reasonably designed to further or achieve a legitimate business purpose and administered in a way

that reasonably achieves that purpose considering the facts and circumstances that were known, or should have been known, to the employer." 29 C.F.R. § 1625.7.

Relevant but non-exhaustive factors considered in this inquiry are: 1) the extent to which the claimed reasonable factor is related to the employer's stated business purpose; 2) the extent to which the employer defined the factor accurately and applied the factor fairly and accurately, including the extent to which managers and supervisors were given guidance or training about how to apply the factor and avoid discrimination; 3) the extent to which the employer limited supervisors' discretion to assess employees subjectively; 4) the extent to which the employer assessed the adverse impact of its employment practice on older workers; and 5) the degree of the harm to individuals within the protected age group, both in terms of the extent of injury and the numbers of persons adversely affected, and the extent to which the employer took steps to reduce the harm, in light of the burden of undertaking such steps. 29 C.F.R. § 1625.7(e)(2).

Defendants failed to "establish[] that there are no non-discriminatory or less discriminatory alternatives or that Defendants made a good faith attempt to find such an alternative. Jennings v. NYS Office of Mental Health, 786 F. Supp. 376, 381 (S.D.N.Y. 1992). As such, Defendants cannot be said to have acted as a reasonable employer especially since Defendants admit they were aware of the number of managerial Group 11 employees who were over the age of 40, and yet despite this knowledge, Defendants also admit that that they categorically excluded non-managerial Group 12 employees from "review or consideration" for layoff. [**Exhibit V**, p. 122-130; **Exhibit J**, pp. 93-94; **Exhibit Z**]. This conduct is *per se* unreasonable for several reasons.

First, Defendants' explanation of its layoff criteria does not comply with the mandates of New York State law when developing a planned Reduction in Force ("RIF"). Pursuant to New York Civil Service Law, any RIF plan must include the following steps: 1) perform a review to

determine which titles and how many persons within each title will be laid off; 2) temporary employees within a job title must be laid off before permanent employees; and 3) following temporary employees, permanent employees must be laid off in inverse order of seniority. *See, e.g.,* D.C. 37, et al. v. New York City Dept. of Parks and Recreation, et al.*,* 113 F.3d 347 (2d Cir. 1997); *see also*, N.Y. Civ. Serv. Law §§ 65(3), 80(1). Defendants admit that they 1) did not "consider or review" non-managerial Group 12 employees for a System-wide RIF, 2) did not review individual employment histories or individual job performance and responsibilities, and 3) were aware of the protected age status of the majority of the managerial Group 11 employees— the only employees Defendants considered for layoffs. [**Exhibit V**, pp. 83, 116-118; 122-130; **Exhibit W**, pp. 117-118; **Exhibit X**, pp. 46-48; **Exhibit J**, pp. 93-94; **Exhibit Z**]. Defendants' disregard for their state law mandates and their decision to knowingly targeting a vulnerable group of employees make clear that Defendants did not act as a prudent employer in the planning or administration of their layoffs.

Second, Defendants failed to implement these layoffs consistently, objectively, or in furtherance of their stated goals. Defendants claim that they planned the layoffs in response to fiscal crisis and with the goal of reducing redundancy in managerial positions. Defendants have stated that their layoff criteria were based on "several factors including, but not limited to, a redesign or elimination of work, redundancy in roles, or excess capacity within a work group or across working groups. . ." [**Exhibit Z**, p. 3]. However, Defendants offer no explanation as to why managerial Group 11 employees were the only employees considered for layoffs. This decision itself is in contravention of Defendants' stated goals of cost savings and restructuring to enhance patient care. Further, Defendants' layoff criteria were impermissibly vague, subjective, and failed to give sufficient guidance to ensure that the decisions regarding who would be terminated would

not be based on the biases and predilections of individual managers. [**Exhibit AA**].  As such, the evidence establishes that Defendants' layoff initiative was not conducted to achieve its stated goals or avoid an adverse impact based on age.

Therefore, Plaintiffs are entitled to summary judgment as to their disparate impact claims of age discrimination in violation of the ADEA.

### C.  Plaintiffs are Entitled to Summary Judgment as to Their Disparate Impact Claims of Age Discrimination Pursuant to the NYS HRL and NYC HRL

The fact that Defendants' layoff policy resulted in a disparate impact as to age also violates the NYS HRL and NYC HRL.  Plaintiffs establish their disparate impact claims of age discrimination because they "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." Chin v. Port Auth. of New York and New Jersey, 685 F.3d 135, 151 (2d Cir. 2012) (citation omitted). Further, Plaintiffs' expert's unrebutted analysis proves that "[t]he statistics…reveal that the disparity is substantial or significant," and are "of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." Robinson v. Metro–North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir.2001). Defendants are unable to rebut these statistics because they have failed to show that "either no statistically significant disparity in fact exists or the challenged practice did not cause the disparity." Id. at 161.

Since "plaintiffs have established a disparate impact violation…each [Plaintiff] 'need only show that he or she suffered an adverse employment decision and therefore was a potential victim of the proved discrimination.'" Chin, 685 F.3d at 151 (*quoting* Robinson, 267 F.3d at 159). Each of the Plaintiffs clearly suffered an adverse employment action when their employment was terminated by Defendants in 2017. *See*, Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

Therefore, Plaintiffs are entitled to summary judgment as to their age discrimination claims pursuant to NYS HRL and NYC HRL.

### D. Plaintiffs Bowen Allen, Birdsong, Henry, Jacob, King, Phipps, and Richardson are Entitled to Summary Judgment as to Their Disparate Impact Claims of Race Discrimination

As Dr. Thompson's unrebutted analysis makes clear, Defendants' layoff policy also resulted in a disparate impact as to race, which violates the Title VII, NYS HRL, and NYC HRL. Title VII prohibits "employers' facially neutral practices that, in fact, are discriminatory in operation." Ricci v. DeStefano, 557 U.S. 577–78 (2009). Further, NYS HRL claims are analyzed by the same legal framework as Title VII, Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010), and "federal…civil rights laws [are] a floor below which the City's Human Rights law cannot fall." The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 § 1 (Oct. 3, 2005).

Here, Plaintiffs' prima facie claims of race discrimination under Title VII, NYS HRL, and NYC HRL are established by the fact that Defendants "use[] a particular employment practice that causes a disparate impact on the basis of race." 42 U.S.C. § 2000e–2(k)(1)(A)(i). Despite Defendants' attempt to claim "that the challenged practice is job related…and consistent with business necessity" Id., Plaintiffs must still prevail because the evidence shows that Defendants "refused to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." Ricci, 557 U.S. at 578, 129 S.Ct. 2658 (citing 42 U.S.C. §§ 2000e–2(k)(1)(A)(ii) and (C)). This includes, but is not limited to, Defendants' refusal to even consider including non-managerial Group 12 employees in the layoffs and insisting on only terminating managerial Group 11 employees despite this policy's conflict with Defendants' stated goals of cost savings and restructuring to enhance patient care. [**Exhibit V**, p. 122-130; **Exhibit**

**J,** pp. 93-94].  As such, the evidence establishes that Defendants' layoff initiative was not conducted to achieve its stated goals or avoid an adverse impact based on race.

Therefore, Plaintiffs are entitled to summary judgment on their disparate impact claims of race discrimination pursuant to Title VII, NYS HRL, and NYC HRL.

### E. Plaintiffs are Entitled to Summary Judgment as to Their Breach of Contract Claims

Plaintiffs are entitled to summary judgment against Defendants as to their breach of contracts claims because they have established "the existence of a contract, the plaintiff[s'] performance pursuant to the contract, the defendant[s'] breach of its contractual obligations, and damages resulting from the breach." PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc., 16 N.Y.S. 3d 298, 299-300 (2d Dept. 2015).  While employment in New York is generally presumed to be at will, this is only a "rebuttable presumption." Weiner v. McGraw–Hill, Inc., 57 N.Y.2d 458 (1982). "An employee may recover...by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment." De Petris v. Union Settlement Assoc., 86 N.Y.2d 406, 408 (1995).  Where the employee can prove each of these elements—the existence of an "express written policy" and detrimental reliance upon that policy—"the employee in effect has a contract claim against the employer." Id. Further, the Second Circuit has held that under New York law, "in determining whether [the presumption of employment at will] is overcome, the trier of the facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives." Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 22 (2d Cir.1994); Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 87–88 (2d Cir. 1998).

Here, as part of their employment, Plaintiffs relied on, and agreed to be bound by, Defendants' manuals, handbooks and policies, including but not limited to the H+H Principles of Professional Conduct, by which Defendants were required to prevent discrimination from occurring in their place of employment. (**Exhibit K; Exhibit L**).    Plaintiffs also relied on Defendants' Operating Procedure 20-39, which required Defendants to engage in an objective review process for managerial decisions affecting Group 11 employees' employment status (**Exhibit M**). While Plaintiffs performed their employment duties satisfactorily, Defendants breached their obligations to Plaintiffs by failing to prevent discrimination in the grounds for termination and failing to comply with Defendants' pre-termination procedures, including but not limited to the HR Separation Execution Plan. [**Exhibit BB**].  As a direct result of Defendants' breach, Plaintiffs have suffered damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and have suffered and continue to suffer distress as a result of such deprivation. [**Exhibit B**].

Therefore, Plaintiffs are entitled to summary judgment as to their breach of contract claims against Defendants.

### F.  Plaintiffs are Entitled to Summary Judgment as to Their 42 U.S.C. §1983 Claims

Plaintiffs are entitled to summary judgment as to their §1983 claims because they have established: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015). Since the Fourteenth Amendment provides public employees with the right to be "free from discrimination," Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir.2006), Plaintiffs, who were public employees, may recover damages under 42 U.S.C. §1983 for the discrimination they experienced in the terms of their

employment with Defendants. Back v. Hastings on Hudson Union Free Sch. Dist*.,* 365 F.3d 107, 122–23 (2d Cir. 2004).

Furthermore, Plaintiffs have established "the existence of a municipal policy or custom…which is officially endorsed by the municipality [as well as] actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights." Guichard v. Town of Brookhaven, 26 F.Supp.3d 219 (E.D.N.Y. 2014). A municipal "policy" exists where: (1) the municipality has promulgated a formal rule advocating or supporting the contested conduct, or (2) "a single act is taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken." *See* Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978).

The evidence establishes that Defendants jointly promulgated the "One New York Plan," which was a municipal policy pursuant to which Plaintiffs' employment at Jacobi Hospital was terminated in violation of their civil rights. [**Exhibit C**; **Exhibit B**]. This One New York Plan was the basis of Defendants' "Workforce Reduction Approach," which eventually became known as the Managerial Efficiency Improvement Initiative, or "MEII." [**Exhibit J**, pp. 27-31]. As Defendants' 30(b)(6) witness made clear, the MEII layoff initiative constituted "one management restructuring effort" in 2017, during which Defendants gradually provided "more specific guidance…in order to achieve the objective." (**Exhibit J**, 100:17-101:3). And as Plaintiffs' expert, Dr. Shane Thompson, explained in his unrebutted Report dated September 9, 2021 [**Exhibit H**], based on the performance of both univariate and multivariate statistical tests, the evidence establishes statistically significant proof that Defendants' MEII discriminated against Plaintiffs on both the basis of race and age, in violation of the protections of the Fourteenth Amendment.

As such, Plaintiffs are entitled to summary judgment as to their §1983 claims against Defendants.

## CONCLUSION

As such, based on the foregoing, Plaintiffs respectfully request that the Court (1) exclude the report and testimony of Defendant's expert, Dr. Christopher Erath, pursuant to FRE 702 and (2) grant summary judgment pursuant to FRCP 56 as to Plaintiffs' disparate impact claims regarding Defendants' violations of the ADEA, Title VII, NYS HRL, NYC HRL, as well as Plaintiffs' §1983 claims and Breach of Contract.

Dated: September 12, 2023

_____//~s~//_____

Erica T. Healey-Kagan (EK-0425)

THE KURLAND GROUP
*Attorneys for Plaintiffs*
85 Broad Street, 28th Floor
New York, New York 10004

26