UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------- x
CLARENCE BOWEN ALLEN, et. al.,

                                    Plaintiffs,


                    –  against –


THE CITY OF NEW YORK and HEALTH AND HOSPITALS
CORPORATION,

                                    Defendants.

------------------------------------------------------------------------------------- x

**DEFENDANTS'
COUNTERSTATEMENT OF
UNDISPUTED MATERIAL
FACTS PURSUANT TO
LOCAL CIVIL RULE 56.1**

19 Civ. 03786 (JMF)

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern

District of New York, Defendants the City of New York ("the City") and New York City Health

and Hospitals Corporation d/b/a NYC Health + Hospitals ("H+H") (collectively "Defendants"),

by their attorney Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York,

respectfully submit the following counterstatement of material facts in response to the Rule 56.1

Statement of Plaintiffs (ECF Dkt. No. 108):

1.  In 2016, Defendants announced the One New York Health + Hospitals Transformation

    Plan. [Exhibit C, hereinafter "One New York Plan"].


    **DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "1"
    are not supported by the exhibit cited thereto. Notwithstanding, Defendants admit
    that in Plaintiff's Exhibit C, it states that One New York Plan builds upon the
    OneNYC initiative and H+H's Vision 2020 initiative. See Plaintiff's Exhibit C at 18.**


2.  The One New York Plan was jointly implemented by Health and Hospitals Corporation in

    connection with the City of New York. [Exhibit C].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "2" are not supported by the exhibit cited thereto. Notwithstanding, Defendants admit that in Plaintiff's Exhibit C, it states that One New York Plan builds upon the OneNYC initiative and H+H's Vision 2020 initiative. See Plaintiff's Exhibit C at 18.**

3. Part of the One New York Plan included the creation of H+H's Office of Transformation. [Exhibit C, p. 51].

**DEFENDANT'S RESPONSE: Disputed except admit that Plaintiff's Exhibit C states that the Office of Transformation at H+H would be created "to drive the planning and implementation of strategies including: community-based care expansion, Centers of Excellence for high-quality care, operational efficiency initiatives, value-based payment, [and] care management." See Plaintiff's Exhibit C at 51.**

4. H+H's Office of Transformation was tasked [with] driving the planning and implementation of Defendants' rebranding initiative to stabilize H+H hospitals like Jacobi Hospital. [Exhibit C, p. 51].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "4" are not supported by the exhibit cited thereto Notwithstanding the objection, Defendants deny the allegations in paragraph "4" except admit that Plaintiff's Exhibit C states that the Office of Transformation was created to drive planning and implementation strategies including: (1) community-based care expansion, (2) Centers of Excellence for high-quality care, (3) operational efficiency initiatives, (4) value-based payment, and (4) care management. See Plaintiff's Exhibit C at 51.**

5. Part of the One New York Plan's rebranding initiative for Health and Hospitals involved Defendants' "Workforce Reduction Approach." [Exhibit I].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "5" are not supported by the exhibit cited thereto. Plaintiffs' Exhibit I is merely a copy of a PowerPoint slide titled "Workforce Reduction Approach" that is divorced from the rest of the PowerPoint presentation slides. See Plaintiff's Exhibit I, bearing Bates Stamp No. D_00336. Plaintiffs do not cite to any evidence that it was part of any so-called "One New York Plan." Defendants also deny allegations set forth in paragraph "5" to the extent it claims the One New York Plan was a "rebranding initiative".**

6. The One New York Plan's rebranding initiative sought to make changes to Health and Hospitals facilities, such as Jacobi Hospital, to enable them to compete with New York City's more upscale private health care facilities. [Exhibit C].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "6" are not supported by the exhibit cited thereto. The goals stated in the document entitled "One New York Health Care for Our Neighborhoods: Transforming Health + Hospitals" was to: (1) "provide sustainable coverage and access to care for the uninsured", (2) "expand community-based services with integrated supports that address the social determinants of health", (3) "transform [H+H[ into a high-performing health system", and (4) "restructure payments to support the health outcomes of communities". See Plaintiff's Exhibit C at 35.**

7. Defendants' Managerial Efficiency Improvement Initiative, or "MEII," was "one pillar of the transformation plan," for which the One New York Plan was the "foundational document." [Exhibit J, pp. 29-30].

**DEFENDANT'S RESPONSE:  Disputed. This statement is controverted by the testimony Plaintiffs cite to, wherein James Fay testified that Plaintiff's Exhibit C was "a foundational document," not "the" foundational document, of "the broader transformation work," that H+H was undertaking. <u>See</u> Plaintiff's Exhibit J at 29:11-18. Specifically, Fay testified as follows:**

> **Q:  Was this report considered as part of the discussions regarding MEI 1 or 2?**
>
> **A: Not directly, so there was not a conversation around the management restructuring that referenced One New York, but the One New York document was a foundational document for the broader transformation work that we were undertaking, and a part of the broader transformation work was around cost management.  [Plaintiff's Exhibit J at 29:9-18.]**
> **…**
> **Q: Were these concerns about financial crisis part of what led to MEI 1 and 2? [Plaintiff's Exhibit J at 30:2-4.]**
> **…**
>
> **A: This page, the significant financial crisis includes in its baseline projections an estimated $1.8 billion operating loss for fiscal year '20. And that was, one objective of the transformation was to reduce that projected operating loss. And so one pillar of the transformation plan was around financial performance and was around reducing our expense structure. [Plaintiff's Exhibit J at 30:8-15].**

8. The One New York Plan's layoff initiative constituted "one management restructuring effort" in 2017, during which Defendants gradually provided "more specific guidance…in order to achieve the objective." (Exhibit J, 100:17-101:3).

**DEFENDANT'S RESPONSE:  Disputed. This statement is not supported by the cited testimony and is controverted by the remainder of Fay's 30(b)(6) testimony. Fay never testified that there existed a "One New York Plan[] layoff initiative."  Further, Plaintiffs do not cite to any evidence that "Defendants" did anything, as there is no evidence that defendant City provided any "guidance" as part of the MEII.  Rather, Fay testified that H+H's original plan was to have one MEII.  H+H undertook a second MEII only after it was later determined that they needed to do a second MEII that differed from the first in that this time they needed to provide more guidance. Specifically, Defendants respectfully refer the Court to the complete cited testimony, which is as follows:**

> **Q: During that MEI 1 process was there always going to be a second phase of he process including the table of organization, do step one and see where things land, and then was there a determination afterwards that step two was necessary? [Plaintiffs' Exhibit J at 100:9-14]**
>
> **…**
>
> **A: the original plan at the beginning of January is that there would be one management restructuring effort, and then a second was not contemplated from the very beginning. The second was implemented after the results of the first management restructuring came in, and a [de]termination was made we needed to have a second, and that second needed to be more guidance, more specific guidance needed to be provided in order to achieve the objective. [Plaintiffs' Exhibit J at 100:17-101:3]**

9. Clarence Bowen-Allen is an African-American who was 60 years old when Defendants terminated his employment as Associate Director of Budget and Director of Accounts Payable in June 2017 as part of Defendants' MEII. [Exhibit N, pp. 33-35].

**DEFENDANT'S RESPONSE: Undisputed to the extent that Plaintiff Allen has previously self-identified his race as African-American but dispute his title as it is**

controverted by H+H business records indicating that Allen held the title of Associate Director of Hospital in the Budget Department at the time his position was selected for inclusion in MEII II. See Ex. 13. Defendants further dispute this statement to the extent Plaintiffs purport that there was one "MEII" and not two separate and distinct MEIIs or that "Defendants" implemented an MEII, as opposed to H+H.

10. Brenda Berman was 54 years old when Defendants terminated her employment as Personnel Director in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 1-2].

**DEFENDANT'S RESPONSE**: Disputed as to Berman's title as it is controverted by H+H business records indicating that she held the title of Personnel Director (HCF) in the Human Resources Department at the time her position was selected for inclusion in MEII II. See Ex. 13. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.

11. Annette Birdsong is an African American who was 60 years old when Defendants terminated her employment as Executive Secretary in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 3-5].

**DEFENDANT'S RESPONSE**: Disputed as to Birdsong's title as it is controverted by H+H business records indicating that she held the title of Executive Secretary in the Patient Relations Department at the time her position was selected for inclusion in

**MEII II. See Ex. 13. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

12. William Henry is African American and was 70 years old when Defendants terminated his employment as Associate Director of Telecommunications in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 6-7].

    **DEFENDANT'S RESPONSE: Disputed as to Henry's title as it is controverted by H+H business records indicating that his title was Associate Director (Hospital) in the Network Services Department at the time his position was selected for inclusion in MEII II. Further disputed to the extent that Plaintiff was an H+H Central employee and not a Jacobi employee, and to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

13. Jose Jacob is Asian and he was 52 years old when Defendants terminated his employment as Associate Director in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 8-9].

    **DEFENDANT'S RESPONSE: Disputed as to Jacob's title as it is controverted by H+H business records indicating that his title was Associate Director Hospital in the Operating Room Department at the time his position was selected for inclusion in MEII II. See Ex. 13. Further disputed to the extent that Plaintiffs purport that**

defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.

14. Jacqueline King is an African American who was 61 years old when Defendants terminated her employment as Associate Director of Nursing in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 10-11].

**DEFENDANT'S RESPONSE: Disputed as to King's title as it is controverted by H+H business records indicating that her title was Associate Director of Nursing in the Operating Room Department at the time her position was selected for inclusion in MEII II. <u>See</u> Ex. 13; <u>see also</u> Pennacchio Dep., Ex. 7, at 64:25-65:7, 92:18-93:17. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

15. Susan LaMonica was 60 years old when Defendants terminated her employment as Director of Nursing in February 2017 as part of Defendants' MEII. [Exhibit B, pp. 12- 13].

**DEFENDANT'S RESPONSE: Disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

16. Jean Phipps is an African American who was 44 years old when Defendants terminated her employment as Assistant Director of Nursing in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 14-16].

**DEFENDANT'S RESPONSE: Defendants object to the allegations in paragraph "16" to the extent that they differ from Plaintiff Jean Phipps' deposition testimony. Plaintiff Phipps testified at her deposition that she self-identifies as Black Caribbean. See Deposition Transcript of Jean Phipps ("Phipps Dep."), dated June 18, 2020, Ex. Ex. 25, at 62:17-19; 72:7-14. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

17. Roslyn Press was 67 years old when Defendants terminated her employment as Assistant Director of Hospitals in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 17-18].

**DEFENDANT'S RESPONSE: Disputed as to Press' title as it is controverted by H+H business records indicating that her title was Associate Director Hospital in the Managed Care – Finance Department at the time her position was selected for inclusion in MEII II. See Ex. 13. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

18. Herbert Richardson is an African American who was 61 years old when Defendants terminated his employment as Associate Director of Support Services in February 2017 as part of Defendants' MEII. [Exhibit B, pp. 19-20].

**DEFENDANT'S RESPONSE: Disputed as to Richardson's title as it is controverted by H+H business records indicating that his title was Associate Director Hospital in the Support Services – Administration Department at the time her position was selected for inclusion in MEII I. See Ex. 9. Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

19. Virginia Tufaro was 65 years old when Defendants terminated her employment as Assistant Director of Nursing in June 2017 as part of Defendants' MEII. [Exhibit B, pp. 21-22].

**DEFENDANT'S RESPONSE: Disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

20. In making the decision to terminate Plaintiffs, Defendants did not properly consider whether employees were temporary or permanent. [Exhibit V, pp. 83, 116, 118; Exhibit W, pp. 117-118; Exhibit X, pp. 46-48].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "20" are not supported by the exhibits cited thereto. Defendants also object to paragraph "20" on the grounds that the fact asserted therein is irrelevant and immaterial and Plaintiffs' conclusory, self-serving testimony is unsupported by any factual detail or evidence and insufficient to give rise to a dispute of material fact. See United Magazine Co. v. Murdoch Magazines Distrib., 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005); Gustavia Home, LLC v. Rice, 2016 U.S. Dist. LEXIS 157212, at \*3 (E.D.N.Y. 2016) ("[T]he non-movant must provide more than conclusory and self-serving statements to avoid summary judgment."). Further disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

21. In making the decision to terminate Plaintiffs, Defendants did not properly consider employees' years of experience. [Exhibit V, pp. 83, 116, 118; Exhibit W, pp. 117- 118; Exhibit X, pp. 46-48].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "21" are not supported by the exhibits cited thereto. Defendants also object to paragraph "21" on the grounds that the fact asserted therein is irrelevant and immaterial and Plaintiffs' conclusory, self-serving testimony is unsupported by any factual detail or evidence and insufficient to give rise to a dispute of material fact. See United Magazine, 393 F. Supp. 2d at 211; Gustavia Home, 2016 U.S. Dist. LEXIS 157212, at**

**\*3. Notwithstanding these objections, Defendants deny the allegations set forth in paragraph "21". Disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence. Defendants also dispute that it was somehow improper to focus on elimination of positions and thus did not require an analysis of an individual employee's work record.**

22. In making the decision to terminate Plaintiffs, Defendants did not properly consider whether employees were close to retirement. [Exhibit V, pp. 83, 116, 118; Exhibit W, pp. 117-118; Exhibit X, pp. 46-48].

   **DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "22" are not supported by the exhibits cited thereto. Defendants also object to paragraph "22" on the grounds that the fact asserted therein is irrelevant and immaterial and Plaintiffs' conclusory, self-serving testimony is unsupported by any factual detail or evidence and insufficient to give rise to a dispute of material fact. See United Magazine, 393 F. Supp. 2d at 211; Gustavia Home, 2016 U.S. Dist. LEXIS 157212, at \*3. Disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence. Defendants also dispute that it was somehow improper to focus on elimination of positions and thus did not require an analysis of an individual employee's work record.**

23. In making the decision to terminate Plaintiffs, Defendants did not properly consider whether employees had pending EEO complaints. [Exhibit V, pp. 83, 116, 118; Exhibit W, pp. 117-118; Exhibit X, pp. 46-48].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "23" are not supported by the exhibits cited thereto. There is no evidence in the record that defendant H+H should have or was required to consider EEO history or individuals who positions were selected as part of MEII I or MEII II. Jacobi leadership testified that when selection positions for inclusion in MEII I or MEII II, they were not aware whether the individuals who held those positions had pending EEO complaints. See Plaintiff's Exhibit V at 80:11-25, 116:10-15; Plaintiff's Exhibit X at 46:3-12. Disputed to the extent that Plaintiffs purport that defendant City took part in either MEII, as Plaintiffs' evidence does not support that statement, and further disputed to the extent that Plaintiffs purport that there was one "MEII" and not two separate and distinct MEII, as is supported by the evidence.**

24. ...In making the decision to terminate Plaintiffs, Defendants utilized a cost savings target. [Exhibit W, pp. 98-103; Exhibit F; Exhibit H].

**DEFENDANT'S RESPONSE: Disputed. The allegations set forth in paragraph "24" are vague and the cited evidence does not support the preceding statement of fact. H+H had a cost savings target for the 2017 fiscal year and sought to reduce workforce costs by reducing approximated 1,000 full time equivalent ("FTE") positions. See Fay Dep., Ex. 1, at 58:3-8, 96:4-97:3, 97:4-18. H+H did not provide a target number for the managerial reductions in MEII I. See Fay 30(b)(6) Dep., Ex. 2, at 44:10-15. H+H**

**did provide FTE targets for MEII II.** <u>See</u> **Fay 30(b)(6) Dep., Ex. 2, at 52:20-53:6; Fay Dep., Ex. 1, at 103:6-21.**

25. After terminating Plaintiffs' employment, Defendants advertised many of the positions Plaintiffs previously held. [Exhibit Y].

   **<u>DEFENDANT'S RESPONSE</u>: Disputed. The cited job postings are speculative and Plaintiffs do not identify when the positions were posted or which positions are the positions in the same departments that Plaintiffs previously held. Defendants also object to paragraph "25" on the grounds that the fact asserted therein is irrelevant and immaterial and Plaintiffs' conclusory, self-serving testimony is unsupported by any factual detail or evidence and insufficient to give rise to a dispute of material fact.** <u>See</u> <u>United Magazine</u>**, 393 F. Supp. 2d at 211;** <u>Gustavia Home</u>**, 2016 U.S. Dist. LEXIS 157212, at \*3.**

26. Many of the individuals who filled the positions Plaintiffs previously held were younger and/or white. [Exhibit B].

   **<u>DEFENDANT'S RESPONSE</u>: Disputed. The allegations set forth in paragraph "26" are not supported by admissible evidence beyond their Plaintiffs' speculative and self-serving affidavits from December 2021.** <u>See</u> **Plaintiffs' Exhibit B. Defendants also object to paragraph "26" on the grounds that the fact asserted therein is irrelevant and immaterial and Plaintiffs' conclusory, self-serving testimony is unsupported by any factual detail or evidence and insufficient to give rise to a dispute of material fact.**

See **United Magazine**, 393 F. Supp. 2d at 211; **Gustavia Home**, 2016 U.S. Dist. LEXIS 157212, at \*3.

27. During Plaintiffs' employment, Defendants maintained employment policies which limited Defendants' ability to terminate the Plaintiffs' employment. (Exhibit K; Exhibit L; Exhibit M).

**DEFENDANT'S RESPONSE: Defendants object to the allegations in paragraph "27" on the grounds that they are not supported by the cited evidence. The cited Exhibit M was rescinded effective December 14, 2016. See Memo, from: Stanley Brezenoff, Interim President, dated: December 14, 2016, subject: Recission of Operating Procedure 20-39 ("Recission"), Ex. 28.**

Dated:       New York, New York
               November 3, 2023

                                     **HON. SYLVIA O. HINDS-RADIX**
                                     Corporation Counsel of the
                                     City of New York
                                     Attorney for Defendants
                                     100 Church Street, Room 2-316
                                     New York, New York 10007
                                     (212) 356-3522

                                     By: /s/ Elisheva L. Rosen
                                         Elisheva L. Rosen
                                         Assistant Corporation Counsel