```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
CLARENCE BOWEN ALLEN et al.,                                       :
                                                                   :
                                   Plaintiffs,                     :
                                                                   :     19-CV-3786 (JMF)
                 -v-                                               :
                                                                   :     OPINION AND ORDER
CITY OF NEW YORK et al.,                                           :
                                                                   :
                                   Defendants.                     :
                                                                   :
-------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      In this case, eleven former employees of Jacobi Medical Center, a public hospital, sue the City of New York (the "City") and the New York City Health and Hospitals Corporation ("H+H") for breach of contract and employment discrimination on the basis of age and race in violation of federal, state, and local law.  Now pending are cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and dueling motions to preclude expert testimony, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See* ECF Nos. 105 & 112.  For the reasons that follow, the Court concludes that Plaintiffs' federal claims of discrimination (and some of their parallel claims under state and federal law) fail as matter of law.  Accordingly, Defendants' motion for summary judgment is GRANTED, and the other motions are DENIED as moot.

## BACKGROUND

The following relevant facts are drawn from the materials submitted by the parties and — unless otherwise noted — are either undisputed or described in the light most favorable to Plaintiffs.  *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

Plaintiffs in this case are Clarence Bowen Allen, Brenda Berman, Annette Birdsong, William Henry, Jose Jacob, Jacqueline King, Susan LaMonica, Jean Phipps, Roslyn Press, Herbert Richardson, and Virginia Tufaro.  Defendant H+H is the largest municipal health system in the United States, serving over one million New Yorkers each year and including eleven acute care facilities.  ECF No. 115 ("Defs.' SOMF"), ¶¶ 1-2.  H+H employees are classified as either Group 11 or Group 12 employees.  Group 12 employees are represented by labor unions and are covered by collective bargaining agreements; Defendants claim that they are primarily frontline staff (such as nurses, patient care associates, and clinical staff) whereas Group 11 consists of managerial employees, although Plaintiffs dispute this characterization.  *Id.* ¶¶ 9-11; *see* ECF No. 121 ("Pls.' SOMF Response"), ¶¶ 10-11.

In 2015, H+H began a transformation from a regional network of health care facilities towards a more centralized organizational structure.  Defs.' SOMF ¶ 3.  At or around the same time, there were baseline projections indicating that H+H would have an approximately $1.8

---

[1]   Plaintiffs purport to dispute most paragraphs in Defendants' Local Civil Rule 56.1 statement of material facts, *see* ECF No. 121 ("Pls.' SOMF Response"), but — as Defendants argue, ECF No. 123 ("Defs.' Reply"), at 1-3 — many of their objections are improper.  In particular, the Court deems undisputed those paragraphs of Defendants' statement with respect to which Plaintiffs' objections either fail to cite any contrary evidence, *see Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014) ("[W]here plaintiffs have not cited an evidentiary basis to contest a factually supported statement by [defendants], the Court has taken that statement as established."), or "do not actually deny or refute the specific facts asserted by Defendants, but instead quibble with Defendants' phraseology or speak past Defendants' asserted facts without specifically controverting them," *Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-6823 (CS), 2023 WL 5586680, at *1 n.1 (S.D.N.Y. Aug. 29, 2023).

billion budget gap for fiscal year 2020. *Id.* ¶ 4. As part of cost containment efforts, savings targets for fiscal year 2017 had to be achieved prior to June 30, 2017. *Id.* ¶ 7. After trying various methods to cut costs, in December 2016, H+H determined that it had not achieved the necessary cost savings and that further steps would need to be taken. *Id.* ¶¶ 12-21. Accordingly, in February 2017, H+H implemented a process, dubbed the Managerial Efficiency Improvement Initiative ("MEII"), aimed at reducing its management staff. *Id.* ¶¶ 22-23. As part of the February 2017 MEII (the "MEII I"), H+H asked all acute care facilities to identify and eliminate management positions that were redundant. *Id.* ¶¶ 26, 28-32.

More specifically, in connection with the MEII I, H+H provided guidance on the reduction of management layers that would ultimately lead to the elimination of certain Group 11 positions. *Id.* ¶ 26; *see also id.* ¶¶ 28-32. If an employee holding such a Group 11 position had an underlying Group 12 title, the employee could return to the Group 12 title position; however, if the employee did not, his or her position with H+H would be eliminated. *Id.* ¶ 26. H+H did not provide target numbers for the workforce reduction, leaving it up to each acute care facility to determine which layers of management should be eliminated. *Id.* ¶¶ 31-33. In the case of Jacobi Medical Center, those decisions were made, at the direction of then-CEO William Foley, by Christopher Mastromano, then-Chief Operating Officer; Dr. John Morely, Chief Medical Officer; Kathleen Garramone, Chief Financial Officer; and Suzanne Pennacchio, Chief Nursing Officer. *Id.* ¶¶ 34-35. Each separately reviewed the positions that reported to them and selected positions for elimination. *Id.* ¶¶ 35, 37-39. Ultimately, Jacobi Medical Center eliminated nineteen positions as part of the MEII I, including those held by Plaintiffs LaMonica and Richardson. *Id.* ¶¶ 44, 146, 164. Of these positions, seven were held by employees who identified as white; six were held by employees who identified as Black; two were held by

employees who identified as Asian; and four were held by employees who identified as Hispanic.  *Id.* ¶ 45.  All were held by employees over the age of forty.  *Id.* ¶ 46.

In March 2017, H+H determined that the results of the MEII I had fallen short of achieving the necessary cost savings and that a second MEII (the "MEII II") would be needed.  *Id.* ¶ 48.  In contrast to the MEII I, the MEII II involved providing acute care facilities with reduction targets and the use of new, standardized tables of organization.  *Id.* ¶¶ 51-54.  But facilities still retained discretion.  *Id.* ¶¶ 58-62.  There was no employee-specific guidance given, and H+H did not identify a dollar target, leaving hospital leadership with leeway to tailor the process to each facility's needs.  *Id.* ¶¶ 64-66.  At the H+H level, the MEII II was led by, among others, Foley, who, after the MEII I, had become the Senior Vice President of Acute Care.  *Id.* ¶¶ 55-56, 66.  At the Jacobi Medical Center level, the MEII II was conducted by Mastromano, who had become CEO; Pennacchio; Ellen Barlis, then-Associate Director of Finance; and Joan Sampson, Human Resources Director.  *Id.* ¶¶ 69-71.  As with those involved in the MEII I, each identified positions for elimination separately.  *Id.* ¶¶ 72-75, 82.  Ultimately, in June 2017, Jacobi Medical Center eliminated twenty-six positions as part of the MEII II, including those held by the other nine Plaintiffs, Allen, Berman, Birdsong, Henry, Jacob, King, Phipps, Press, and Tufaro.  *Id.* ¶¶ 87, 108, 112, 120, 127, 132, 139, 149, 153, 169.  Of the twenty-six positions that were eliminated, thirteen were held by employees who identified as white; ten were held by employees who identified as Black; one was held by an employee who identified as Asian; and two were held by employees who identified as Hispanic.  *Id.* ¶ 88.  Twenty-four of the twenty-six positions were held by employees over the age of forty.  *Id.* ¶ 89.

On December 4, 2017, Plaintiffs filed complaints with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race and/or age discrimination and, on or about

4

September 15, 2018, received right-to-sue letters. *Id.* ¶¶ 92-97. Plaintiffs filed a summons with notice in New York County Supreme Court on December 13, 2018, and Defendants removed the action to this Court on April 29, 2019. *Id.* ¶¶ 99-100. In their operative Complaint, Plaintiffs bring disparate impact and disparate treatment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ECF No. 22 ("Compl."), ¶¶ 74-78; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, *id.* ¶¶ 79-83; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *id.* ¶¶ 84-88; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107, *id.* ¶¶ 89-93; claims under 42 U.S.C. § 1983, *id.* ¶¶ 94-102; and claims for breach of contract, *id.* ¶¶ 103-108.[2]

On December 30, 2021, Plaintiffs Birdsong and Richardson moved to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. ECF No. 70. By Opinion and Order dated September 12, 2022, the Court denied the motion, finding that the moving Plaintiffs could not demonstrate commonality or typicality given, among other things, "the two different MEIIs and the degree to which each employment decision was based on individual department leaders' discretion." *Allen v. City of New York*, 19-CV-3786 (JMF), 2022 WL 4133132, at *2 (S.D.N.Y. Sept. 12, 2022) (ECF No. 79) ("*Class Cert. Op.*"). The Court also concluded that Rule 23(b)(3)'s predominance inquiry "doomed" the motion because there were "a litany of individualized issues that would subsume any common issues at trial, including why (and by whom) each position was selected for inclusion in the relevant MEII, whether each of those determinations was tainted with bias, whether Defendants had legitimate, non-discriminatory

---

[2] Plaintiffs' operative Complaint also invokes 42 U.S.C. § 1981, *see* Compl. ¶ 95, but Plaintiffs disavow any such claims in response to Defendants' motion for summary judgment. *See* ECF No. 119 ("Pls.' Opp'n"), at 20. Accordingly, the Court deems any such claims to be withdrawn.

reasons for each of them, and damages." *Id.* Plaintiffs promptly moved for reconsideration. ECF No. 84. In their memorandum or law in support of that motion, Plaintiffs "introduce[d] — no fewer that thirty-five times — a term that [had] not appear[ed] anywhere in their original motion papers: 'the One New York Policy.'" *Allen v. City of New York*, No. 19-CV-3786 (JMF), 2023 WL 171402, at *1 n.1 (S.D.N.Y. Jan. 12, 2023) (ECF No. 93) ("*Reconsideration Op.*"). The Court held that "the new label [did] nothing to change the fact that . . . Plaintiffs challenge two initiatives that 'differed in significant respects.'" *Id.* (quoting *Class Cert. Op.*, 2022 WL 4133132, at *1). For that reason and others, the Court denied the motion in its entirety. *See id.* at *3.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of

law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (internal quotation marks omitted). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted).

As the Second Circuit has observed, courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often a central factual issue. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). Summary judgment, however, "remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997). Just as in other contexts, "an employment discrimination plaintiff faced with a properly supported summary judgment motion . . . must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up). For their part, courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).

**DISCUSSION**

As noted, Plaintiffs bring disparate impact and disparate treatment claims under federal, state, and local laws prohibiting discrimination on the basis of age and race, claims under Section 1983, and breach-of-contract claims. The Court will begin with their claims under federal law.

**A. Federal Disparate Impact Claims and Section 1983 Claims**

To sustain disparate impact claims under Title VII and the ADEA and claims under Section 1983, Plaintiffs have to identify a specific policy or practice. *See Chin v. Port Authority of New York and New Jersey*, 685 F.3d 135, 154 (2d Cir. 2012) ("To make out a disparate impact claim . . . , a plaintiff must identify a specific discriminatory employment practice."); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (requiring a custom, policy, or practice for municipal liability under Section 1983). Plaintiffs state that they "*have* identified" three "neutral employment policies, practices, and criteria": (1) the MEII I "for [some] Plaintiffs" and the MEII II "for [the remaining] Plaintiffs"; (2) "the One New York Health + Hospitals Transformation Plan"; and (3) "Defendants' refusal to consider Group 12 employees in the 2017 layoffs, instead only terminating managerial Group 11 employees, when the only relevant difference between these employees is that Group 12 employees are represented by labor unions . . . and Group 11 employees are not represented." Pl.'s Opp'n 8. But none of these efforts to identify a custom, policy, or practice pass muster.

First, Plaintiffs invocation of the two MEIIs falls short for many of the same reasons that the Court rejected their motion for class certification. As the Court previously found, "there 'was no singular MEII,' but rather two different MEIIs . . . . [that] differed in significant respects. For example, while the . . . MEII [II] had a standardized organizational chart and specific employee reduction target, the . . . MEII [I] had neither. Additionally, different people

8

drafted the two MEIIs at NYC H+H, and different people were involved in implementing them at Jacobi Medical Center. And ultimately, in the case of each MEII, the relevant decisions were based largely on the views of the leaders of each department, who were entrusted with broad discretion to identify positions suitable for elimination." *Class Cert. Op.*, 2022 WL 4133132, at *2 (citations omitted). Contrary to Plaintiffs' suggestion, the fact that the Court reached these conclusions in the context of assessing commonality and typicality for purposes of Rule 23 does not mean they have no bearing here. Instead, they are squarely relevant to the Court's present analysis as Plaintiffs' claims are predicated at least in part on the assumption that the two MEIIs can be considered a singular policy for purposes of proving their disparate impact claims.

Perhaps recognizing this deficiency, Plaintiffs try now to disaggregate the two MEIIs and treat each as a separate policy causing disparate impacts. But this effort also falls short for two reasons. First, subject to the discussion of the alleged decision to exclude Group 12 employees from the layoffs below, Plaintiffs do not actually allege — let alone offer evidence to support — what aspect or criteria of either MEII caused disparate outcomes. *See, e.g.*, *Fitchett v. City of New York*, No. 18-CV-8144 (PAE), 2021 WL 964972, at *22 (S.D.N.Y. Mar. 15, 2021) (observing that a plaintiff "cannot attack an overall decision-making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." (quoting *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003))); *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." (internal quotation marks omitted)). Second, and in any event, Plaintiffs offer no statistical basis to

9

conclude that either or both of the MEIIs caused any disparate impact because the analysis offered by their expert — assuming *arguendo* that it is even admissible — does not distinguish between the two MEIIs. *See* ECF No. 106-8 ("Thompson Suppl. Rep.") (analyzing the impacts only of the "2017 layoffs" writ large). Given the clear differences and distinctions between the two MEIIs, *see Class Cert. Op.*, 2022 WL 4133132, at *2, this is not a case where the various aspects of an employment decisionmaking process are "not capable of separation for analysis" and are thus "properly analyzed as one employment practice." *Chin*, 685 F.3d at 155. Accordingly, there is no evidence in the record from which a reasonable juror could conclude that either of the MEIIs, alone, led to disparate outcomes on the basis of race or age.

Plaintiffs' attempt to blur the distinctions between the two MEIIs by labeling them, together, the "One New York Health + Hospitals Transformation Plan" fares no better. As the Court found in denying Plaintiffs' motion for reconsideration of the denial of their class certification motion, "the One New York Policy" — a phrase that, conspicuously, Plaintiffs first employed in their motion for reconsideration — actually consisted of "two initiatives that 'differed in significant respects.'" *Reconsideration Op.*, 2023 WL 171402, at *1 n.1. Plaintiffs' heavy reliance on a report titled "One New York," ECF No. 106-3, does nothing to alter that conclusion. The report is not a policy or practice, but rather a high-level description of H+H's fiscal and operational problems as well as transformation goals. Nor does their citation to the deposition testimony of James Matthew Fay on behalf of H+H, which stands only for the proposition that the "One New York" *report* — not any particular and cohesive policy — "was a joint effort between the City and its agency." *See* ECF No. 106-10. At bottom, the "One New York Policy" is nothing more than a phrase used to encompass the two MEIIs, which, as discussed, do not constitute a policy or practice sufficient to support Plaintiffs' claims.

That leaves only "Defendants' refusal to consider Group 12 employees in the 2017 layoffs, [and] instead only terminating managerial Group 11 employees." Pls.' Opp'n 8.  Here, Plaintiffs do pass the threshold test of identifying a specific employment policy or criterion, across both MEIIs, that *could* theoretically support a disparate impact or Section 1983 claim, given that it is an identifiable "element or practice within the [overall] process." *Fitchet*, 2021 WL 964972, at *22.  But this supposed policy or practice cannot support Plaintiffs' claims either. For one thing, there is considerable force to Defendants' argument that, "as Group 12 employees were not managerial employees, it would [have been] illogical to include Group 12 titles in MEII I and MEII II where the express purpose was to reduce managerial redundancies and standardize H+H's managerial structures across H+H acute care facilities." ECF No. 123 ("Defs.' Reply"), at 9 (citing Defs.' SOMF ¶¶ 22, 26, 29-30. 48. 50. 63).  But regardless, the theory fails for an even more elementary reason: Plaintiffs offer no evidence whatsoever to support the assertion that distinguishing between Group 11 employees and Group 12 employees in the MEIIs had any disparate impact on the basis of race or age.  They assert that Group 11 employees "were older and largely black" while Group 12 employees "were younger and more white," Pls.' Opp'n 14, but they offer no record citations, let alone expert analysis, to support these assertions, *see Gittens-Bridges v. City of New York*, No. 19-CV-22 (ER), 2022 WL 954462, at *17 (S.D.N.Y. Mar. 30, 2022) (holding that the defendants were entitled to summary judgment on disparate impact claims under the ADEA where the plaintiff "introduced only anecdotal evidence from her own deposition," failed to introduce "any statistical evidence of . . . disparate impact," and failed to "paint[] a clear picture of employee demographics . . . and which employees were affected by the allegedly discriminatory practices"); *see also* Defs.' Reply 10-11.  Such conclusory assertions are not enough to withstand summary judgment.  *See, e.g.*, *Fitchett*, 2021 WL 964972,

11

at *24 ("It is, of course, possible that evidence, thoroughly adduced and reliably analyzed, could have established liability on a disparate impact theory. The evidence adduced here, however, falls well short."). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' federal disparate impact claims and Section 1983 claims.

**B. Federal Disparate Treatment Claims**

Plaintiffs' disparate treatment claims under Title VII and the ADEA are all analyzed under the familiar "three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Teasdale v. New York City Fire Dep't*, 574 Fed. App'x 50, 51 (2d Cir. 2014) (summary order) (citing *McDonnell Douglas*, 411 U.S. 792 (1973)). Under that framework, a plaintiff bears the initial burden to establish a *prima facie* case of discrimination by showing that (1) he or she was within a protected group; (2) he or she was qualified for the position; (3) he or she experienced adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer "to articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). Assuming the employer does so, the presumption of discrimination "drops from the picture," and "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Plaintiffs here contend that "anecdotal evidence of intentional discrimination . . . . taken in conjunction with the Plaintiffs' statistical evidence, and evidence that Plaintiffs' jobs were in fact back-filled and/or they were replaced by younger employees" permits "a reasonable jury [to] conclude that Defendants intentionally discriminated against the plaintiffs by terminating them."

12

Pls.' Opp'n 16. If the record bore out these assertions, it would suffice to establish a *prima facie* case and shift the burden to Defendants. But the record does not support Plaintiffs' assertions. For starters, "[s]tatistical evidence on its own is insufficient to support an inference of intentional discrimination." *Teasdale v. City of New York*, No. 08-CV-1684 (KAM), 2013 WL 5300699, at *7 (E.D.N.Y. Sept. 18, 2013) (citing, for example, *Martin v. Citibank, N.A.*, 762 F.2d 212, 218 (2d Cir. 1985)). In any event, Plaintiffs do not identify any similarly situated comparator group as part of their statistical analysis that could — even in conjunction with other evidence — support an inference of discrimination. *Cf. Richardson v. City of New York*, No. 17-CV-9447 (JPO), 2018 WL 4682224, at *7 (S.D.N.Y. Sept. 28, 2018) (noting that "Plaintiffs have shown that African Americans are underrepresented at FDNY . . . when FDNY's workforce is compared to that of other City agencies that have filled comparable positions from the exact same ranked applicant lists that FDNY uses" and that "Plaintiffs have adequately alleged that FDNY is similarly situated to other City agencies"). Although Plaintiffs suggest that unionized employees function as appropriate comparators, that is not the case. As Defendants point out, unionized and non-unionized employees by definition "were not subject to the same terms and conditions of employment — union employees are subject to collective bargaining agreements that govern the terms and conditions of employment while non-union employees are at-will employees." Defs.' Reply 10. Moreover, while Plaintiffs dispute any categorical distinction between the Group 11 and 12, they do not meaningfully dispute that Group 11 employees generally are in management positions while Group 12 employees are generally frontline staff. *See* Defs.' SOMF ¶¶ 10-11; Pls.' SOMF Response ¶¶ 10-11. Finally, Plaintiffs' argument that "this Court has already accepted Unionized Employees as proper comparators," Pls.' Opp'n 15, is meritless. Judge Pauley, in the Order Plaintiffs cite, concluded only that demographic

information about Group 12 employees "may be relevant to Plaintiffs' case," pointedly noting also that, "based on Defendants' averments[,] the two groups of employees may have key differences," ECF No. 41.

The remainder of Plaintiffs' assertions fail to raise any inference of discrimination. For instance, they assert that "Plaintiffs' jobs were in fact back-filled and/or they were replaced by younger employees." Pls.' Opp'n 16; Pls.' SOMF ¶¶ 25-26. But the only evidence they offer in support of these assertions are a list of job postings, which fails even to identify the positions Plaintiffs had previously held, see , ECF No. 106-25 (Healey-Kagan Decl. Ex. Y), and Plaintiffs' own affidavits, some of which include statements such as: "I was told that the reason for my termination was because my position was being eliminated entirely; however, another person was hired to do my job which was supposedly being eliminated"; and "Despite being informed that my position was eliminated entirely, I learned that another younger woman assumed my responsibilities," ECF No. 106-2 (Healey-Kagan Decl. Ex. B), at 15, 20. Most, if not all, of these statements are inadmissible insofar as the declarants lack personal knowledge of the relevant facts, *see, e.g.*, *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004), but, regardless, they are little more than conclusory assertions, unaccompanied by any information regarding the purported replacements, including their ages, their relative qualifications, how they were hired, and so on. Such "[v]ague" and conclusory "assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion." *Messinger v. JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 382 (S.D.N.Y. 2015).

Plaintiffs also contend that an inference of age discrimination can be drawn from the fact that "all but two (2) of the forty-five (45) employees who were terminated" as part of the MEIIs

"were over the age of forty (40)," Pls.' Opp'n 16, but neglect to mention that eight of the eleven Plaintiffs alleging age discrimination were themselves over the age of forty *when they were hired*, see Defs.' Mem. 27, "undermining any possible inference of age discrimination," *Soto v. Marist Coll.*, No. 17-CV-7976 (KMK), 2019 WL 2371713, at *14 (S.D.N.Y. June 5, 2019) (citing cases). Any inference is further undermined by the fact that four of the key decisionmakers behind the alleged adverse actions in the two MEIIs were *also* over the age of forty. *See* Defs.' SOMF ¶ 36; *see also Crowley v. Billboard Magazine*, 576 F. Supp. 3d 132, 143-44 (S.D.N.Y. 2021). And while Plaintiffs point to the racial breakdown of the employees who were terminated as "raising an inference of discrimination based on race," *see* Pls.' Opp'n 17, it does no such thing. Among other things, Plaintiffs fail to establish the underlying racial breakdown of H+H employees prior to the MEIIs and — as Defendants point out — "several of the co-Plaintiffs identify as races other than Black or Asian." Defs.' Mem. 30.

Finally, contrary to Plaintiffs' claims, the record does not reflect "anecdotal evidence of intentional discrimination." Pls.' Opp'n 16. Plaintiffs point to their affidavits, many of which include statements such as "I believe the reason for my termination from Jacoby Medical Center was because of my age and race." Healey-Kagan Decl. Ex. B at 2; *see also id.* at 7, 9, 11, 13, 16, 18, 20; *id.* at 4 ("I believe the harassment I experienced was due to my age, race, and ethnicity."). A couple also include conclusory and general statements about alleged discrimination prior to and separate from Plaintiffs' termination. *See id.* at 12 ("I witnessed white employees with less experience than employees of color being given opportunities over more-qualified employees of color. These same sorts of occurrences happened on the basis of age, where younger employees were given opportunities over more-qualified employees who were older."); *id.* at 21 ("Even prior to their MEII, Defendants discriminate[d] against those employees like myself who are part

15

of protected classes, i.e. age, by targeting me for unfounded performance critiques."). Critically, however, these statements of subjective belief are unsupported by any concrete facts or other evidence, such as comments made regarding Plaintiffs' ages or races. And "it is well established . . . that a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden of [offering evidence] that could plausibly support an inference of discrimination." *Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-CV-3779 (JMF), 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017) (citing *Jones v. City of N.Y.*, No. 14-CV-826 (CBA) (RLM), 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015)); *see also Brodt v. City of N.Y.*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("[A] plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination." (internal quotation marks omitted)). To the extent Plaintiffs raise a pattern-or-practice theory of disparate treatment, it fares no better because such a theory requires a "prima facie showing of a pervasive policy of intentional discrimination," which, as discussed above, they have not made. *See Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 427 (S.D.N.Y. 2014); *see also Wright v. Stern*, 450 F. Supp. 2d 335, 363 (S.D.N.Y. 2006) ("To prevail on a pattern or practice disparate treatment claim, . . . plaintiffs must demonstrate that intentional discrimination was the employer's 'standard operating procedure.'" (citation omitted)).

For these reasons, Plaintiffs fail to establish a *prima facie* case of discrimination on the basis of race or age, and their disparate treatment claims therefore also fail as a matter of law. But even if they could establish a *prima facie* case, Defendants have proffered a legitimate, nondiscriminatory reason for Plaintiffs' terminations — namely, that they were part of an effort to streamline H+H's organizational structure and reduce management staff to achieve cost savings, *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (finding that a

company-wide reduction-in-force "constitutes a legitimate, nondiscriminatory reason for termination of employment") — and, for the reasons set forth above, no reasonable factfinder could conclude it is more likely than not that Plaintiffs' inclusions in H+H's workforce reduction was a pretext, let alone that the real reason for their terminations was their race or age, *see, e.g.*, *id.* at 170. Accordingly, even if Plaintiffs could meet their burden at the first step of the *McDonnell Douglas* framework — which they cannot — their disparate treatment claims under Title VII and the ADEA would, and do, fail at the third step. In either event, Defendants are entitled to summary judgment on Plaintiffs' disparate treatment claims under federal law.

## C. Claims Under State and Local Law

That leaves only Plaintiffs' claims under state and local law, namely their claims under the NYSHRL and the NYCHRL and their claims for breach of contract. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial," as here, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid,*

17

*PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted) (citing cases)).

Despite the general presumption, the Court concludes that it is in the interest of judicial economy to exercise supplemental jurisdiction over Plaintiffs' disparate impact claims under both the NYSHRL and the NYCHRL and their disparate treatment claims under the NYSHRL. Plaintiffs' claims under the NYSHRL are subject to the same standards as their claims under the ADEA and Title VII, *see, e.g.*, *Caesar v. Riverbay Corp.*, No. 15-CV-8911 (NRB), 2017 WL 6887597, at *12 (S.D.N.Y. Dec. 27, 2017); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010),[3] so "it would be the height of inefficiency to defer a decision on [these claims] to a state court," *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017); *accord Avery v. DiFiore*, No. 18-CV-9150 (JMF), 2019 WL 3564570, at *5 (S.D.N.Y. Aug. 6, 2019).  And while the standards that apply to claims under the NYCHRL differ in various ways from those that apply to the ADEA and Title VII, *see, e.g.*, *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015), they too require proof of a specific discriminatory employment policy or practice to sustain a disparate impact claim, *see, e.g.*, *Teasdale*, 574 Fed. App'x at 51-52; *Richardson v. City of New York*, No.

---

[3]   In August 2019, New York amended the NYSHRL "to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *McHenry v. Fox News Net., LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300). But courts in this district have held that the amendment is not retroactive and that it therefore applies only to actions that took place after its effective date, August 12, 2019, *id*. at 69 (citing cases), which means that the pre-amendment version of the NYSHRL applies here.

17-CV-9447 (JPO), 2018 WL 4682224, at *9 (S.D.N.Y. Sept. 28, 2018).  Thus, it would be equally inefficient to defer adjudication of those claims to a state court.  Accordingly, Plaintiffs' disparate impact claims under both the NYSHRL and the NYCHRL and their disparate treatment claims under the NYSHRL are dismissed for the same reasons that their corresponding federal claims were dismissed.

By contrast, the Court declines to exercise supplemental jurisdiction over Plaintiffs' disparate treatment claims under the NYCHRL and their breach of contract claims.  They allege no federal counterparts to their breach of contract claims, and their NYCHRL disparate treatment claims are subject to different standards and must be analyzed separately.  *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that NYCHRL claims "require[ ] an independent analysis"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining supplemental jurisdiction over a NYCHRL claim after dismissing claims under Title VII and the NYSHRL).  Accordingly, Plaintiffs' disparate treatment claims under the NYCHRL and their breach of contract claims are dismissed, albeit without prejudice to refiling them in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' claims are dismissed — in the case of their disparate treatment claims under the NYCHRL and their breach of contract claims, without prejudice to refiling in state court.[4]

---

[4] The Court need not and does not address Defendants' arguments regarding administrative exhaustion, timeliness, and whether the City is a proper Defendant, *see* Defs.' Mem. at 6-9, nor Plaintiffs' arguments as to whether Defendants' "layoff criteria" is "violative of [New York] civil service law," *see* Pls.' Opp'n 11-14. Additionally, having reviewed Plaintiff's proposed sur-reply, ECF No. 124; *see also* ECF No. 127 (reserving judgment on the propriety of Plaintiffs' sur-reply and denying Plaintiffs' request to file any further sur-reply because they had "already filed what is for all intents and purposes a sur-reply without prior authorization from the Court"),

19

Accordingly, Plaintiffs' motion for summary judgment and both sides' *Daubert* motions are DENIED as moot. The Clerk of Court is directed to terminate ECF Nos. 105 and 112, to enter judgment for Defendants consistent with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: August 28, 2024
New York, New York

JESSE M. FURMAN
United States District Judge

---

the Court finds that it would not affect the Court's analysis or conclusions. Accordingly, Plaintiffs' request for the Court to consider their proposed sur-reply is denied as moot.